UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ABHIJIT RAMACHANDRAN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-00811-X |
| | § | |
| VINAY JAIN; AROG | § | |
| PHARMACEUTICALS INC; JAIN | § | |
| INVESTMENTS LLC; and VIDERA | § | |
| PHARMACEUTICALS LLC, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Vinay Jain and AROG Pharmaceuticals Inc.'s (AROG) motion for summary judgment [Doc. No. 157] and Plaintiff Abhijit Ramachandran's motion for summary judgment on AROG's counterclaims [Doc. No. 159].  For the reasons explained below, the Court **GRANTS IN PART AND DENIES IN PART** the defendants' motion for summary judgment and **GRANTS IN PART AND DENIES IN PART** Ramachandran's motion for summary judgment.

### I.     Factual Background

Ramachandran alleges that he was wrongfully terminated from his employment at AROG, a startup pharmaceutical company.  AROG was formed in 2010 by defendant Jain to develop a drug for treating cancer with an anticancer agent known as Crenolanib.  AROG hired Ramachandran in 2010 and sponsored his H-1B visa.  Shortly after accepting employment with AROG, Ramachandran signed a Nondisclosure and Intellectual Property Agreement (2010 Intellectual Property

Agreement).  This agreement assigned to AROG all of Ramachandran's interest in any intellectual property created during his employment.  Ramachandran started as an at-will employee, but AROG later offered him term-of-years contracts in 2012, 2014, and 2015.  His most recent employment contract began in 2015. Ramachandran initially contended that this contract expired in 2019 based on an alleged modification to the 2015 agreement.  However, both parties now agree that there was no modification and that the 2015 contract expired in 2017.

In addition to his employment contracts, Ramachandran was awarded Incentive Units under AROG's Long Term Incentive Plan.  The Long Term Incentive Plan provides employees the opportunity to participate in the long-term growth of AROG through the issuance of Incentive Units, worth some percentage of the company's worth if it is ever sold.  Ramachandran was awarded 250,000 units over the course of his employment.  He alleges that since AROG's formation in 2010, Jain has made false representations that AROG would provide him a piece of AROG's financial upside.  And to effectuate this promise, AROG awarded him Incentive Units, although Jain never intended to honor any of the promises associated with their issuance.

In 2017, AROG demoted Ramachandran.  Afterwards Jain and AROG management allegedly threatened to terminate Ramachandran's employment unless he agreed to relinquish his 250,000 Incentive Units.  Because AROG was Ramachandran's visa sponsor, termination could force him and his family to return to India.  Jain allegedly used this fact and misrepresented the details of the visa

process to pressure Ramachandran into compliance.  Ramachandran refused, and AROG terminated his employment in late February 2017.  In March 2017, Ramachandran accepted a new job as Senior Manager of Global Development Operations with Theravance Biopharma (Theravance).

In early 2018, Ramachandran sued the defendants under numerous causes of action, seeking performance or the value of his employment contract, performance or the value of his 250,000 Units, and a declaration that he is an inventor of the Crenolanib Cancer Drug patents.

This case has an extensive procedural history.  But as relevant here, Ramachandran's third amended complaint included eleven claims against four defendants: Jain; AROG; Jain Investments, LLC; and Videra Pharmaceuticals, LLC. The Court dismissed Defendants Jain Investments, LLC, and Videra Pharmaceuticals, LLC, and six of Ramachandran's claims in a prior order.[1]  There are five remaining claims: breach of contract, common law fraud, violation of the Texas Payday Law, quantum meruit, and unjust enrichment.  AROG also brings several counterclaims against Ramachandran for breach of the Intellectual Property Agreement, breach of the 2015–2017 Employment Agreement, fraud by nondisclosure, and breach of fiduciary duty.

## II.  Legal Standard

Summary judgment is appropriate only if, viewing the evidence in the light

---

[1] Doc. No. 153.

most favorable to the non-moving party,[2] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "A fact is material if it 'might affect the outcome of the suit,'" and a "factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[4]

### III.   Defendants' Motion for Summary Judgment

As a preliminary matter, Ramachandran argues that the Court must first decide his Motion to Compel before it can decide the defendants' motion for summary judgment. The Court expressly dismissed Ramachandran's motion to compel without prejudice in a previous order.[5] Ramachandran never refiled this motion although he had the opportunity to do so. He argues that the Court's order of administrative closure prevented him from refiling his motion to compel. But administrative closure is a technical device that assists the Court—it does not prevent the parties from filing motions or seeking leave to file motions. Either party could have filed motions or sought leave to file motions at any point. Ramachandran chose not to pursue his motion to compel, and he cannot do so at this late stage in litigation.

The defendants move for summary judgment on Ramachandran's five remaining claims. Ramachandran does not oppose summary judgment on his claims for violation of the Texas Payday Law or quantum meruit. Therefore, the Court

---

[2] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016).

[3] FED. R. CIV. P. 56(a).

[4] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5] Doc. No. 152 at 3–4.

**GRANTS** summary judgment on these claims.  There are three remaining claims: breach of contract, common law fraud, and unjust enrichment.  The Court will address each claim in turn.

## A.    Breach of Contract

Ramachandran brings a breach of contract claim against AROG for breach of his 2015 Employment Agreement.  He alleges that AROG breached the contract when it terminated him without cause, instructed him to stop working as of February 21, 2017, and failed to pay him the amount he was contractually due.  AROG moves for summary judgment on three grounds: (1) Ramachandran did not suffer any damages as a result of his termination because his loss was fully mitigated; (2) the 2015 Employment Agreement was a satisfaction contract, and Ramachandran cannot prove that his termination was not based on AROG's honest dissatisfaction with the performance of his job duties; and (3) Ramachandran was paid through the last day of his employment in accordance with his employment contract.

Under Texas law, to recover for breach of contract, a plaintiff must prove "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach."[6]

The Court first considers the fourth element—whether Ramachandran suffered any damages as a result of AROG's alleged breach of contract—because it is

---

[6] *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

5

dispositive.  In Texas, a "discharged employee must use reasonable diligence to mitigate damages by seeking other employment."[7]  So, "[t]he correct measure of damages for wrongful discharge of an employee is the present cash value of the contract if it had not been breached, less any amounts that the employee should in the exercise of reasonable diligence be able to earn through other employment."[8]  The Court finds that Ramachandran's damages are fully mitigated.

Ramachandran's third amended complaint alleges that AROG "breached the terms of the 2015 Employment Contract, as modified" by firing him without cause.  And as a result, he alleges that he is entitled to damages of "at least $372,166" in lost wages from February 2017 to July 2019.[9]  In its motion for summary judgment, AROG argues that Ramachandran's breach of contract claim fails as a matter of law because any loss he suffered from AROG's alleged breach of contract was fully mitigated by his new job at Theravance.  AROG points to the deposition testimony of a Theravance human resources representative who testified that from April 2017 to February 2019, Ramachandran's total compensation was $415,215.18.[10]  And based on his salary at the time, by July 2019, he would have been compensated around $490,000.[11]

---

[7] *Gulf Consol. Int'l, Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex. 1983) (per curiam).

[8] *Id.*

[9] Doc. No. 46 at 27; Doc. No. 158-1 at 154.  This calculation is based on his annual salary over twenty-nine months (February 2017 to July 2019).

[10] Doc. No. 158-1 at 201 at 28:2–5.

[11] *Id.* at 201 at 28:14–25; 202 at 29:1–8.  Her deposition was taken on May 20, 2019.

In his response to AROG's motion for summary judgment, Ramachandran does not contest AROG's evidence. Instead, he abandons his allegation that the employment contract was modified and claims that the contract expired on July 31, 2017. In doing so, he argues that there is a factual dispute about damages because he made only $43,629 with Theravance from February 2017 to July 2017, but under the 2015 Employment Agreement, AROG owed him close to $70,000 for that period.

AROG contends that it is too late for Ramachandran to amend his pleadings—he cannot change his allegations now to avoid summary judgment. The Court agrees. AROG has denied throughout this case that the 2015 Employment Agreement was extended to 2019.[12] Both parties admit that discovery proved that the 2015 contract expired in 2017.[13] Ramachandran moved for leave to file a fourth amended complaint on this basis, which the Court denied.[14] Then, after AROG moved for summary judgment, Ramachandran filed a "stipulation to Eliminate Specific Legal Theories at Issue in Defendants' Motion for Summary Judgment," to which the defendants objected.[15] The stipulation changed his breach of contract allegations to reflect the unmodified contract term, 2015–2017. Ramachandran purported to file this "stipulation" under Federal Rule of Civil Procedure 15(d).[16] However, supplemental pleadings under Rule 15(d) can be filed only after the party has sought and received

---

[12] Doc. No. 51 at 5.

[13] Doc. No. 158 at 13 n.2; Doc. No. 170 at 8–9.

[14] Doc. No. 77 (Lynn, C.J.).

[15] Doc. No. 118.

[16] *Id.*

from the court permission to file.[17]  Ramachandran did not move for leave to file this supplemental pleading.  Instead, it was filed after the defendants filed their motion for summary judgment and after Chief Judge Lynn denied Ramachandran's request to amend his pleadings.  The Court cannot allow him to amend his pleadings now, and summary judgment is not a proper time to amend a pleading.[18]

Because Ramachandran's damages were fully mitigated by his new employer, his breach of contract claim fails as a matter of law.  Therefore, the Court **GRANTS** AROG's motion for summary judgment on Ramachandran's breach of contract claim.

## B.     Common Law Fraud

Ramachandran brings a claim for common law fraud against AROG and Jain. He alleges that they are responsible for fraudulent statements that Ramachandran would "garner a piece of the upside associated with the financial growth of AROG . . . *via* AROG's issuance of 250,000 Investment Units pursuant to the AROG [Long Term Incentive] Plan" and for fraudulent statements that AROG would "employ [Ramachandran] pursuant to the terms of a term employment contract that would pay [him] the full value of the 'Initial Term' if he was terminated without cause."[19] The defendants move for summary judgment on four grounds: (1)  there is no evidence to support the fraud claim; (2) Texas law does not recognize a claim for fraudulent

---

[17] FED. R. CIV. P. 15(d); *Willbern v. Bayview Loan Servicing, L.L.C.*, 842 F. App'x 865, 868 (5th Cir. 2021).

[18] *See Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990).  Ramachandran also failed to alternatively plead that he was seeking damages under the original, unmodified contract, and his second and third amended complaints all alleged that he was entitled to recover almost $400,000 on the basis of the amended contract—even after AROG moved to dismiss Ramachandran's breach of contract claim on this basis.  Doc. No. 15 at 13.

[19] Doc. No. 46 at 29.

breach of contract; (3) the fraud claim is barred by the merger clause in Ramachandran's 2015 employment contract; and (4) AROG performed all of its obligations to Ramachandran.

The Court first addresses the threshold issue of whether Ramachandran's fraud claim is independent of his breach of contract claim. The defendants argue that Ramachandran's fraud claim is "improperly premised on a purported breach of contract and Texas law does not recognize a claim for 'fraudulent breach of contract.'"[20] While it is true that the general rule is that "the failure to perform the terms of a contract is a breach of contract, not a tort[,] . . . when one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud."[21] Indeed, "it is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself."[22]

Ramachandran's common law fraud claim appears to be a claim for fraudulent inducement,[23] which Texas law recognizes as "a distinct category of common-law fraud that shares the same elements [of common law fraud]."[24] To prove a claim for

---

[20] Doc. No. 158 at 41.

[21] *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) (cleaned up).

[22] *Id.*

[23] *See* Doc. No. 165 at 43 n.55 (characterizing his fraud claim as a "fraudulent inducement claim" in the context of his unjust enrichment claim). His allegations center around promises that, Ramachandran says, Jain had no intention of performing in connection with a contract, specifically, the Long Term Incentive Plan.

[24] *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015); *Formosa Plastics Corp. USA*, 960 S.W.2d at 48 ("A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made."); *Universal MRI &*

fraudulent inducement, the plaintiff must prove "(1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury."[25] Where a fraud claim is based on "a promise to perform in the future, in addition to the above elements, it is necessary to prove facts that the promise was made with a present intent not to perform."[26]

"[A] party's intent is determined at the time the party made the representation," but intent may also "be inferred from the party's subsequent acts after the representation is made."[27] Because "intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence."[28] Consequently, it "is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony."[29]

---

*Diagnostics, Inc. v. Med. Lien Mgmt. Inc.*, 497 S.W.3d 653, 660 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("The failure to perform the terms of a contract generally is a breach of contract, not a tort, unless there is evidence that a party entered into the contract with no intention of performing.").

[25] *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 557 (Tex. 2019), reh'g denied (Oct. 18, 2019) (cleaned up).

[26] *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 571 (Tex. App.—Dallas 1989, no pet.).

[27] *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986).

[28] *Id.* at 435.

[29] *Id.*

While "the mere failure to perform a contract is not evidence of fraud,"[30] failure to perform "is a circumstance to be considered with other facts to establish intent."[31] "Slight circumstantial evidence . . . is sufficient to support a finding of fraudulent intent" "when considered with the breach of promise to perform."[32] "[A] party's denial that he ever made a promise is [also] a factor showing no intent to perform when he made the promise."[33]

Ramachandran presents no evidence to support his allegation that AROG made fraudulent statements that it would employ him according to the terms of the 2015 Employee Agreement.  Nor does he make any allegations that AROG did not intend to honor its promises regarding the 2015 Employment Agreement.  Mere allegations that a party failed to perform according to the terms of a contract are not sufficient to establish fraud.[34]  Therefore, the Court **GRANTS** the defendants' motion for summary judgment on the fraud claim against AROG as it relates to the 2015 Employment Contract.[35] Ramachandran's response instead focuses solely on Jain's representations in connection with the 2010 Long Term Incentive Plan.

---

[30] *Formosa Plastics Corp.*, 960 S.W.2d at 48.

[31] *Spoljaric*, 708 S.W.2d at 435.

[32] *Id.*

[33] *Id.*

[34] *See Formosa Plastics Corp.*, 960 S.W.2d at 48.

[35] *See Roberts v. Overby-Seawell Co.*, No. 3:15-CV-1217-L, 2018 WL 1457306, at *11 (N.D. Tex. Mar. 23, 2018) (Lindsay, J.) ("When a party fails to pursue a claim or defense beyond the party's initial complaint, the claim is deemed abandoned or waived." (citing *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (noting that "an issue raised in the complaint but ignored at summary judgment may be deemed waived") (cleaned up)).

Ramachandran claims that Jain did not intend to perform these promises and is therefore liable for fraud.

The Court finds a dispute of material fact on whether Jain ever intended Ramachandran to receive a payout under the Plan.  Ramachandran alleges that he was promised that he "would garner a piece of the upside associated with the financial growth of AROG, which included the growth associated with the development of the Crenolanib Cancer Drug, via AROG's issuance of 250,000 Investment Units pursuant to the AROG [Long Term Incentive] Plan."[36]  In order to induce Ramachandran to stay with AROG, Jain allegedly promised Ramachandran the "chance to become a 'millionaire'" through the Plan, and promised that he would "cash in on his financial stake once AROG's cancer drug reached Phase III of the FDA Approval Process."[37]  Relying on Jain's representations, Ramachandran stayed.  AROG's cancer drug reached Phase III, but no payout occurred.

The Court finds that Ramachandran has produced enough circumstantial evidence to present his claim to a jury.  For example, he points to the fact that Jain denies ever talking to Ramachandran about the Plan before awarding him incentive units.[38]  In his affidavit, Ramachandran also alleges that Jain attempted to force him, with threats of economic harm, to accept a new, less favorable contract that nullified

---

[36] Doc. No. 46 at 29.

[37] Doc. No. 165 at 4.

[38] Doc. No. 166 at 9, 26:13–26:19.  Jain also denies that he ever talked to Ramachandran about his participation in the long-term growth of the company.  *Id.*

his interest in his 250,000 incentive units.[39]  He also points to the deposition testimony of Tyler Brous, one of Jain's financial advisors, who testified that Jain asked him to convince Ramachandran to execute an amended Plan that would eliminate Ramachandran's right to recover under the Plan in the event of an initial public offering.[40]

The defendants argue that Ramachandran only describes an explanation of what could happen in the future—not a contractual promise.  Generally, "predictions and promises to act in the future cannot form the basis of a fraudulent inducement claim."[41]  Although Jain's statement about Ramachandran's potential to become a millionaire is a statement about the future or a prediction, the question of whether Jain made the representations concerning the Long Term Incentive Plan "with the intention, design and purpose of deceiving, and with no intention of performing the act"[42] is a question of fact for the jury.

The Court therefore **DENIES** the defendants' motion for summary judgment as to Ramachandran's fraud claim against Jain.

---

[39] *Leon's Fine Foods of Tex., Inc. v. Merit Inv. Partners, Ltd.*, No. 05-97-00543-CV, 2000 WL 1048491, at *3 (Tex. App.—Dallas July 31, 2000, pet. denied) (finding a defendant's "attempts to force [Plaintiff] to accept a new, less favorable lease, was evidence supporting [its fraud] claim").  The defendants object to this evidence on multiple grounds, alleging that they are "confusing, call for speculation and for lack of personal knowledge (FRE 602) and as improper lay opinion testimony (FRE 701). These were also in the context of a settlement offer, which is inadmissible (FRE 408)."  Doc. No. 171 at 9.  But Federal Rule of Evidence 408 does not apply here because defendants state that this was "an offer to avoid termination for cause," not an offer to settle a disputed claim.  Further, this is proper opinion testimony under Rule 701 as it is rationally based on Ramachandran's perception, helpful to determining a fact issue, and not based on evidence within the scope of Rule 702.

[40] Doc. No. 166 at 46, 46:6–48:18.

[41] *Flight Sols., Inc. v. Club Air, Inc.*, No. 3:10-CV-G0085-F, 2010 WL 11530922, at *3 (N.D. Tex. Oct. 25, 2010) (Furgeson, J.).

[42] *Spoljaric*, 708 S.W.2d at 434.

## C.    Unjust Enrichment

Finally, Ramachandran brings a claim for unjust enrichment against both AROG and Jain.   He contends that he is "entitled to recover the value of the intellectual property" that he provided to the defendants because they "obtained a significant benefit from [Ramachandran]'s development of such intellectual property by fraud, duress, and/or taking undue advantage."[43]   AROG moves for summary judgment on the claim against it for three reasons: (1) this claim fails because it concerns matters governed by Ramachandran's written contracts with AROG; (2) Ramachandran was adequately compensated for his work at AROG; and (3) Ramachandran's damages calculation is flawed.   Jain moves for summary judgment on the ground that there is no evidence that he received any personal benefit as a result of any fraud, duress, or taking undue advantage of Ramachandran.

The Court turns first to AROG's argument that Ramachandran's claim against it is barred by the presence of a written contract.[44]   "The effect of . . . written contracts

---

[43] Doc. No. 46 at 34.

[44] Ramachandran argues that the defendants have forfeited this argument by failing to assert an affirmative defense based on the existence of an express contract.   Failure to comply with Federal Rule of Civil Procedure Rule 8(c), which requires defendants to affirmatively state its affirmative defenses, may result in forfeiture.   *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986).   "But if the affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, then a technical failure to comply precisely with Rule 8(c) is not fatal."   *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 771 (5th Cir. 2017) (cleaned up).   A defense is not waived if "(1) the defendant raised the affirmative defense at a pragmatically sufficient time, and (2) the plaintiff was not prejudiced in its ability to respond."   *Id.* (cleaned up).   The Court finds that Ramachandran was not unfairly surprised or prejudiced in his ability to respond.   He learned of the defense at a pragmatically sufficient time—the same argument was raised by the defendants in their motion to dismiss.   Doc. No. 79 at 27.   Ramachandran does not allege that he was prejudiced, and in fact responded to the argument in his response to defendants' motion for summary judgment.   Moreover, the Fifth Circuit "ha[s] repeatedly rejected waiver arguments when a defendant raised an affirmative defense for the first time at summary judgment—or even later."   *Motion Med. Techs.*, 875 F.3d at 772.

on claims for unjust enrichment is [a question] of law."[45]  Under Texas law, unjust enrichment claims are based on quasi-contract.[46]  "Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory . . . ."[47]  The Texas Supreme Court explained the policy behind the rule: "[P]arties should be bound by their express agreements. When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement."[48]

AROG argues that its relationship with Ramachandran is governed by numerous written agreements, including a 2010 Nondisclosure and Intellectual Property Agreement, multiple written employee agreements, and the Long Term Incentive Plan and related Award Agreements.  These agreements, AROG argues, "set forth the parties' respective intellectual property rights, the terms of Plaintiff's employment with AROG, and the parties' respective rights and obligations regarding the long-term incentive units issued to Plaintiff."[49]  The Court agrees.  As explained in the Court's previous Memorandum Opinion and Order, the 2010 Nondisclosure and Intellectual Property Agreement governs Ramachandran's interest in the Crenolanib patents, and his interest in the patents is contingent upon his ability to judicially rescind the 2010 agreement.[50]  He has not done so.

---

[45] *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000).

[46] *Id.*

[47] *Id.* at 684.

[48] *Id.*

[49] Doc. No. 158 at 44–45.

[50] Doc. No. 153 at 10.

But Ramachandran contends that because he was induced by fraud, he can elect to set aside the contract with AROG to recover under an unjust enrichment theory. He cites an exception to the rule that holds that the general rule does not apply when the contract is "unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other reasons."[51]  But the Court has already rejected Ramachandran's attempt to challenge the legal validity or enforceability of the assignment agreement.

The Court next turns to the unjust enrichment claim against Jain. Ramachandran claims that because there was no express contract between him and Jain, he "can establish a quasi-contract based on Dr. Jain's obligation—as the administrator of AROG's 2010 [Long Term Incentive] Plan—to act in good faith in the administration of the plan."[52]  He also clarifies that his unjust enrichment claim is derivative of his fraud claim, not a separate cause of action.  He "seeks to recover the unjust enrichment gained by [Jain] . . . arising from Dr. Jain's fraudulent inducement of [Ramachandran]."

Jain moves for summary judgment on the ground that there is no evidence that Jain was personally unjustly enriched.  He contends that although Ramachandran has alleged that AROG is worth millions, he has failed to prove that Jain himself was unjustly enriched.  And Jain points to evidence that he is not an AROG shareholder.[53]

---

[51] Doc. No. 165 at 43 (citing 2 WILLIAM V. DORSANEO III, TEXAS LITIGATION GUIDE § 218.04 (2021)).

[52] *Id.* at 44.

[53] Doc. No. 158-1 at 96.

16

AROG's shareholders are Jain Investments, LLC; Jain Children's 2005 Irrevocable Trust; and Jain 2005 Dynasty Irrevocable Trust.[54]  Ramachandran does not contest this evidence.  Instead, he claims that Jain has received from the fraud "a higher financial stake in a $750,000,000 company and the acclaim associated with being an inventor of a cancer drug for Leukemia."[55]  He provides no evidence to prove these allegations, and such evidence is required to defeat a motion for summary judgment.[56]

Therefore, because Ramachandran's interest in any intellectual property is governed by the express assignment agreement and because he has not provided evidence that Jain himself was unjustly enriched, the Court **GRANTS** the defendants' motion for summary judgment on Ramachandran's unjust enrichment claim as to both AROG and Jain.

### IV.    Plaintiff's Motion for Summary Judgment

The Court next turns to AROG's counterclaims.  Ramachandran moves for summary judgment on three of AROG's counterclaims: breach of contract, fraud by non-disclosure, and breach of fiduciary duty.

### A.    Breach of Contract

AROG brings a counter claim against Ramachandran for breach of the 2010 Intellectual Property Agreement.  Ramachandran moves for summary judgment on

---

[54] *Id.*

[55] Doc. No. 165 at 45.

[56] Although Ramachandran alleges that Jain controlled AROG through these companies, he provides no evidence to support this claim.

this claim on one ground: he characterizes the intellectual property agreement as an employment contract and argues that he is entitled to judgment as a matter of law because the agreement is unenforceable by novation or recission.  Specifically, he argues that the subsequent 2012 employment contract was a novation contract, rendering the 2010 agreement unenforceable.  In addition, he argues that he entered into two more employment agreements with AROG that suspended and revoked all prior agreements, including the 2010 agreement.  In response, AROG argues that Ramachandran mischaracterizes the 2010 agreement as an employment contract. AROG maintains that the agreement is a separate intellectual property agreement.

The Court has already considered and rejected Ramachandran's argument that the 2010 Intellectual Property Agreement was replaced by three novation contracts.[57]  In its previous Memorandum Opinion and Order, the Court found that any interest Ramachandran has in the Crenolanib patents is contingent on his ability to judicially rescind the 2010 agreement. [58]  Even so, the 2010 agreement is not an employment contract.  For starters, the 2010 agreement is titled "Nondisclosure and Intellectual Property Agreement,"[59] and the subsequent employment agreements are titled "Employee Agreement."[60]  Section 2 of the 2010 agreement states that the agreement has no effect on employment status: "Nothing in this Agreement alters the

---

[57] Doc. No. 100 at 22.

[58] Doc. No. 153 at 10; *see also id.* at 10 n.36. (Without recission, "the 2010 Assignment automatically assigned to AROG his interest in any intellectual property created after the 2015 Employment Agreement.").

[59] Doc. No. 158-1 at 47; ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 221 ("The title and headings are permissible indicators of meaning.").

[60] Doc. No. 159-2, 159-3, 159-4.

at-will nature of your employment with AROG Pharmaceuticals."[61]   It does not contain any employment terms.   Instead, it is a waiver and assignment of Ramachandran's intellectual property interests to AROG.   The subsequent agreements do not operate as an express novation, nor are they so inconsistent as to operate as a recission.[62]

Ramachandran's arguments about the employment agreements' merger clause are similarly unavailing.   The employment agreements have no express provision rescinding the Intellectual Property agreement.   The employment agreement merger clauses state that the current agreement "supersede[s] any and all other agreements . . . between the parties hereto with respect to the subject matters thereof . . . ."[63]   But as explained above, the subject matter of the agreements are different—the employment agreements do not cover the same subject matter as the assignment agreement and therefore the employment agreements do not supersede the assignment agreement.

Because the 2010 Intellectual Property Agreement is not unenforceable as a result of a novation or recission, the Court **DENIES** Ramachandran's motion for summary judgment on this claim.

### B.    Fraud by Non-Disclosure and Breach of Fiduciary Duty

---

[61] Doc. No. 158-1 at 47.

[62] *See Fulcrum Cent. v. AutoTester, Inc.,* 102 S.W.3d 274, 277 (Tex. App.—Dallas 2003, no pet.) ("The substitution of a new agreement occurs when a later agreement is so inconsistent with a former agreement that the two cannot subsist together." (cleaned up)).

[63] Doc. No. 158-1 at 78.

19

AROG also brings a counterclaim for fraud by nondisclosure and breach of fiduciary duty for Ramachandran's failure to disclose his educational pursuits to AROG. AROG claims that Ramachandran failed to disclose the fact that he was pursuing two degrees: a Master of Business Administration and a Master of Science in Finance. By doing so, AROG argues that Ramachandran "sought to induce AROG into offering a promotion and raise that it would not have offered had it been fully apprised of the fact that Ramachandran would not be able to devote the time, skill and attention that would be required for the role of Director of Clinical Operations."[64] And further, it argues that because "Ramachandran occupied a position of great trust and confidence" as AROG's Director of Clinical Operations, he had a fiduciary duty to fully disclose to AROG matters affecting AROG's business.[65]

AROG contends that Ramachandran's Employment Agreement forms the basis of its counterclaims. Specifically, AROG relies on the provision that states, "Subject to any absences due to vacation or illness, Employee shall devote substantially all of his business time, skill and attention to the performance of his assigned duties and shall be available to carry out such services at all reasonable times and places."[66] In his motion for summary judgment, as a defense to both claims, Ramachandran argues that he had no duty to disclose his educational pursuits to

---

[64] Doc. No. 47 at 17.

[65] *Id.* at 20.

[66] Doc. No. 158-1 at 72.

AROG.[67]   Both claims require AROG to prove that Ramachandran had a duty to disclose his educational pursuits, so the Court will discuss them together.

> To establish a claim for fraud by non-disclosure, the plaintiff must show:
>
> (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury.[68]

"As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information.   Thus, silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent."[69]   "[T]he existence of a duty to disclose is a question of law that must be decided by the court, not by the jury."[70]   To prove Ramachandran had a duty to disclose, AROG must establish that

> (1) there was a fiduciary or other special relationship requiring disclosure, (2) the defendant discovered new information that made an earlier representation misleading or untrue, (3) the defendant created a false impression by making a partial disclosure, or (4) the defendant voluntarily disclosed some information and therefore had a duty to disclose the whole truth.[71]

---

[67] He also contends that AROG cannot claim that they would have fired him if they had known about the MBA program because AROG knew that there was another employee enrolled in an MBA program and made accommodations for that employee.   However, Ramachandran cites to no evidence for this claim.

[68] *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019).

[69] *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) (citation omitted).

[70] *Mercedes-Benz USA, LLC*, 583 S.W.3d at 562.

[71] *Guevara v. Lackner*, 447 S.W.3d 566, 578 (Tex. App.—Corpus Christi–Edinburg 2014, no pet.).

To prove a claim for breach of fiduciary duty, AROG must prove "(1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages."[72] Under Texas law, fiduciary relationships can be formal or informal.[73] "An informal fiduciary relationship, generally called a 'confidential relationship,' is one that arises from a moral, social, domestic, or purely personal relationship of trust and confidence."[74]

In response to Ramachandran's motion for summary judgment, AROG reiterates that it has a valid claim for fraud by nondisclosure and breach of fiduciary duty because Ramachandran knew that pursuing education outside of work "would preclude him from complying with the requirement in his employment contract that he 'devote substantially all of his business time, skill and attention to the performance of his assigned employment duties and . . . be available to carry out such services at all reasonable times and places.'"[75]  AROG points to examples of how Ramachandran allegedly breached this contractual requirement: *i.e.* by reading school emails during work hours, scheduling class during work hours, using AROG conference call services to facilitate his schoolwork, and delivering course work to school when he told AROG he was going out on AROG business.  AROG concludes that because "[t]he evidence is clear that the Plaintiff was not devoting substantially

---

[72] *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

[73] *Crim Truck & Tractor Co. v. Navistar*, 823 S.W.2d 591, 594 (Tex. 1992).

[74] *Bombardier Aerospace Corp.*, 572 S.W.3d at 220.

[75] Doc. No. 163 at 20.

all of his business time to his assigned duties at AROG. . . . Defendants[] have a counterclaim for fraud by nondisclosure and breach of fiduciary duty."[76]

The Court finds that AROG's claims sound in breach of contract, not fraud or breach of fiduciary duty, and therefore fail as a matter of law.  To prove Ramachandran had a duty, AROG merely points to the contract term he allegedly breached.  But under Texas law, "[i]f the defendant's conduct gives rise to liability because it breaches an agreement between the parties, the plaintiff's claim ordinarily sounds only in contract."[77]  Here, because AROG relies on Ramachandran's employment contract to prove that he had a duty to disclose, its claim is for breach of contract only.

Moreover, AROG's breach of fiduciary duty claim and its fraud claim mirror its breach of contract claim.  In its second amended counterclaim, AROG brings a claim for breach of the 2015–2017 Employment Agreement, alleging that Ramachandran breached this contract "by failing to perform his duties as AROG's Director of Clinical Operations and by failing to devote substantially all of his business time, skill and attention to the performance of his duties as AROG's Director of Clinical Operations."[78]

---

[76] *Id.*

[77] *Jones v. Pesak Bros. Constr., Inc.*, 416 S.W.3d 618, 630 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see also OXY USA, Inc. v. Cook*, 127 S.W.3d 16, 20 (Tex. App.—Tyler 2003, no pet.) ("If the action depends entirely on pleading and proving the contract in order to establish a duty, the action remains one for breach of contract only, regardless of how it is framed by the pleadings." (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 499 (Tex. 1991) (Gonzalez, J., concurring))).

[78] Doc. No. 47 at 16.

Therefore, the Court **GRANTS** Ramachandran's motion for summary judgment on AROG's counterclaims for breach of fiduciary duty and fraud by nondisclosure.

## V.    Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the defendants' motion for summary judgment. The Court **DENIES** the motion as to Ramachandran's fraud claim concerning the 2010 Long Term Incentive Plan. The Court **GRANTS** the motion as to the rest of Ramachandran's claims. The Court **GRANTS IN PART AND DENIES IN PART** Ramachandran's motion for summary judgment on AROG's counterclaims. The Court **DENIES** the motion as to AROG's breach of contract counterclaim and **GRANTS** the motion as to AROG's breach of fiduciary duty and fraud by nondisclosure counterclaims. The Court also **ORDERS** the clerk's office to unseal Ramachandran's sealed brief and appendix in support of his response to the defendants' motion for summary judgment [Doc. Nos. 165–168].[79]

**IT IS SO ORDERED** this 11th day of January, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[79] In a previous order, the Court denied without prejudice Ramachandran's motion to seal. [Doc. No. 152]. In that order, the Court explained that Ramachandran needed to show good cause to seal. Ramachandran never refiled his motion to seal but instead filed his summary judgment materials under seal without leave of court.