**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**(Dallas Division)**

| | | |
|---|---|---|
| ABHIJIT RAMACHANDRAN | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 3:18-cv-00811** |
| | § | |
| VINAY JAIN | § | |
| AROG PHARMACEUTICALS, INC. | § | |
| JAIN INVESTMENTS, LLC | § | |
| | § | |
| **Defendants.** | § | |

---

## JOINT STATUS REPORT

---

Plaintiff Abhijit Ramachandran ("Plaintiff" or "Abhijit") and Defendants Dr. Vinay Jain ("Dr. Jain") and AROG Pharmaceuticals, Inc. ("AROG")[1](Dr. Jain and AROG collectively "Defendants") submit the following Joint Status Report[2] regarding their objections to exhibits, witnesses and deposition designations, response thereto, and counter-designations pursuant to Paragraph 10 of the Court's Amended Scheduling.[3]

### I.    Plaintiff's Objections to Defendants' Exhibit List

| Exhibit Number | Concise non-argumentative | Defendants' objections with | Plaintiff's response with concise |
|---|---|---|---|

---

[1]    AROG believes that summary judgment was granted in its favor for fraud by the Court on January 11, 2022. [Dkt. No. 172].  Therefore, AROG does not believe it is a party to this lawsuit.  Should the Court find that it did not grant summary judgment in AROG's favor as to the fraud claim, AROG submits this Joint Pre-Trial Order.

[2]    Defendants would like to address with the Court Plaintiff's disclosure of confidential settlement information contained in Plaintiff's Motion in Liminie to admit other acts of fraud that are intrinsic evidence relevant to Plaintiff's fraud claim and memorandum of law supporting [Dkt No. 182]. In this filing Plaintiff disclosed two confidential settlement amounts he knew were considered confidential. This docket was filed on the Court's website that can be assessed by the general public.

[3]    The Parties agree that this Joint shall also serve as the parties filing of their objections to witnesses, exhibits, and deposition designations pursuant to Paragraph 8 of the Court's Amended Scheduling Order.

| | description of Plaintiff's proposed exhibit | concise explanation and authority | explanation and authority |
|---|---|---|---|
| 48 | Termination Confirmation by Third Party Payroll Company | Full Objection. This document has not been authenticated as a business record. It was allegedly a printout from a third-party payroll company's online database. This document is inadmissible hearsay and no exception to the hearsay rule applies because it is not a business record. It is not a reliable document because the text appears to be entries from a dropdown selection of set responses. Fed. R. Evid. 802. | |

## II.    Defendants' Objections to Plaintiff's Exhibit List[4]

| Exhibit No. | Concise non-argumentative description of Plaintiff's proposed exhibit | Defendants' objections with concise explanation and authority | Plaintiff's response with concise explanation and authority |
|---|---|---|---|
| 1 | Defendant AROG's Written Request (by G. Fisher) to Plaintiff to Release Long Term Incentive | This letter, entitled "Employment Settlement Agreement" (not a request to release of long term incentive units as Plaintiff describes it) contained | Fed. R. Evid. 408 does not apply because this letter was presented to Abby before he was terminated and before Abby raised any possibility of a claim between the parties.[5] |

---

[4]    Defendants incorporate by reference the Motion in Liminie with Incorporated Order into their objections to Plaintiff's exhibit list, witness list, deposition designations and Voir Dire questions.

[5]    *Holcombe v. Advanced Integration Tech.*, Civil Action No. 4:17-CV-522, at *5-6 (E.D. Tex. Jan. 14, 2019) (holding that "separation agreement and release" presented to terminated employee was not protected by Rule 408 because "there was no indication that plaintiff had any discussion with Defendants about whether they engaged in actionable conduct.") (*citing Haun v. Ideal Indus, Inc.*, 81 F.3d 541, 547& n.3 (5th Cir. 1996) and *Seasonwein v. First Montauk Securities*, 324 F. App'x 160, 162 (3d Cir. 2009) (holding that, "in the case of potential claims, the policy

| | | | |
|---|---|---|---|
| | Units (Dated 2/16/2017) | essential terms to AROG Pharmaceuticals, Inc.'s ("AROG") proposed Severance Agreement and Release, should not be admissible as this was conduct and statements made during negotiations in attempt to settle a claim. Federal Rule of Evidence 408(a)(1). | |
| 2 | AROG's letter (by J. Eckardt) concerning Plaintiff's Continued Employment (Dated 9/17/2015) | | |
| 3 | Plaintiff's Cell Phone Text messages with Defendant Dr. Jain | | |
| 4 | Plaintiff's "What's App" Text Messages with Defendant Dr. Jain | | |
| 5 | Defendant AROG's Notice of Termination (Dated 2/21/2017) | | |
| 6 | Defendant Dr. Jain's Cease & Desist letter demanding UCSF to destroy Dr. Shah's experiments and results (Dated 8/8/2011) | Defendant's cause of action regarding AROG's intellectual property, including FLT3 Patents, has been dismissed by this Court [Dkt. No. 153]. Any discussions or exhibits regarding AROG's inventions, patents and patent applications therefrom, related contracts (e.g., | Plaintiff offers Dr. Jain's other acts of fraud because it is "**intrinsic**" evidence necessary to "complete the story" of Dr. Jain's fraud against Abby and to "evaluate all of the circumstances under which the defendant acted."[6] In short, this evidence shows that Dr. Jain committed patent fraud against Dr. Shah and UCSF by intentionally misleading AROG's patent |

behind Rule 408 does not come into play."); *compare United States v. Jones*, 663 F.2d 567, 570-71 (5th Cir. 1981) (holding that "statement at issue is paradigmatic nonhearsay; it was offered because it contains threats made against officers of the federal courts, i.e., it contains the operative words of this criminal action.).

[6]      *Waste Mgmt. v. River Birch*, 920 F.3d 958, 967 (5th Cir. 2019).

| | | material transfer agreements and confidentiality agreements) should not be admissible as they are completely irrelevant to Plaintiff's remaining cause of action of fraud concerning the Long Term Incentive Units ("LTIUs") and Defendants' sole remaining counterclaim regarding the incentive plan whereby the LTIUs were issued.<br><br>Additionally, Plaintiff is trying to present prior business dealings and disputes to prove the Defendants acted in accordance in this case. Plaintiff cannot use evidence of a different matter on separate occasions to try to say Defendant did the same act here.  Federal Rule of Evidence 404.<br><br>Alternatively, if the court finds that this is relevant, its probative value would be substantially outweighed by unfair prejudice, confusing the issues, misleading the jury and wasting the court and jury's time. Patent matters are highly complex and would require extensive foundation and | attorney about Dr. Shah's role as an inventor in the Crenolanib Patents.[7] Dr. Jain even mislead the patent attorney about Abby's role, claiming that he worked for AROG in "business development" to conceal his role working with Dr. Shah.<br><br>If Dr. Jain is willing to intentionally lie to AROG's patent attorney to ensure that AROG maintains exclusive control over the Crenolanib Patents, Abby can show that Dr. Jain intended to lie to him to maintain exclusive control over the financial growth of AROG. Because AROG admits that the value of the Crenolanib Patents is a proxy for the value of AROG, Dr. Jain's fraud to obtain control of one is akin to a fraud to maintain control of the other. Alternatively, this evidence is admissible "**_extrinsic_**" evidence under Rule 404(b) to prove intent, motive, guilty knowledge, plan, preparation, and absence of mistake or accident. To support both arguments, Plaintiff incorporates by reference his Motion In Limine on this matter [ECF No. 182]. |

---

[7]     _See Frank's Casing Crew & Rental Tools, Inc. v. PMR Technologies, Ltd._, 292 F.3d 1363, 1376-77 (Fed. Cir. 2002) (holding that patent was unenforceable because listed inventors "deliberately concealed [another inventor's] involvement in the conception of the invention and engaged in a pattern of intentional conduct designed to deceive the attorneys and patent office as to who the true inventors were.").

| | | | |
|---|---|---|---|
| | | explanation of the facts and circumstances when this matter has been dismissed. [Dkt. No. 153]; Federal Rules of Evidence 401, 403, 404(a)(1). | |
| 7 | Defendant AROG's Internal Memo noting that "vested" units remain outstanding when terminated without cause | This Employment Agreement Term Sheet used during the negotiation process for Ramachandran's eventual 2012 Employment Agreement should not be admitted, as this Term Sheet outlines proposed elements of Ramachandran's 2012 employment agreement that were considered sometime before June 11, 2012 that were subsequently negotiated and, in final form, memorialized in a signed agreement on July 30, 2012 (approximately 6 weeks later).  The language of the 2012 Employment Agreement shall govern within the bounds of the employee-employer relationship and the LTIUs granted therein were governed by the 2010 LITU plan as provided in the 2012 Employment Agreement. This exhibit should not be admitted as this is outside the plain language of the contract that was finally agreed to and executed by the parties. (UCC 2-202) | This document is relevant to prove two things. Frist, it shows that AROG intended to allow Abby to maintain his "vested" units if he was terminated without cause. This interpretation would align with Abby's position in accord with section 10(a) of the LTIU Plan. Second, showing that this term sheet involves issues related to both Abby's 2012 Employment Contract and Abby's LTIUs awarded as part of that contract, it supports Abby's allegations that he and Dr. Jain talked in detail about both of these subjects. That is, this document refutes Dr. Jain's testimony that he never had such a conversation with Abby. |
| 8 | Defendant AROG's 2010 Long Term Incentive Plan | | |

| | | | |
|---|---|---|---|
| 9 | Defendant AROG's 2014 Summary re: Outstanding LTIU units for Former AROG Employees (Dated 6/12/2014) | | |
| 10 | Plaintiff's 2012 Employment Contract (Dated 7/30/2012) | | |
| 11 | Plaintiff's Amendment to 2012 Employment Contract (Dated 5/1/2013) | | |
| 12 | Plaintiff's 2014 Employee Agreement (Dated 7/30/2014) | | |
| 13 | Plaintiff's 2015 Employee Agreement (Dated 7/30/2015) | | |
| 14 | Plaintiff's Weekly Timesheet (Week of November 28, 2016) | | |
| 15 | Plaintiff's Weekly Timesheet (Week of December 5, 2016) | | |
| 16 | Plaintiff's Weekly Timesheet (Week of December 12, 2016) | | |
| 17 | Plaintiff's Weekly Timesheet (Week of December 19, 2016) | | |
| 18 | 2014 Long Term Incentive Plan (Dated 9/30/2014) | | |
| 19 | Defendant Dr. Jain's Agreement to Issue a 1.5% Equity Warrant to | This should not be admissible as this was a prior settlement that has a confidentiality clause. | Plaintiff offers Dr. Jain's other acts of fraud because it is "**intrinsic**" evidence necessary to "complete the story" of Dr. Jain's |

| | Lennox Capital Partners (Dated 6/2/2015) | Further this is not relevant to Plaintiff's claim as Lennox Capital and additional parties to this matter (collectively "Lennox") were not employees of AROG, did not have LTIUs or other incentive award units provided to AROG's employees, and this matter is subject to a confidential settlement agreement for additional parties beyond the defendants in the case (e.g., Foundations associated with Dr. Jain) wherein Dr. Jain and associated entities have not admitted to any wrongdoing and does not meet any of the exceptions provided for in the rule. Federal Rule of Evidence 408(a)(1).

This and related proposed exhibits related to the settled Lennox dispute are only being offered for the purpose of attempting to show that accused wrongdoing of Dr. Jain and AROG – without an admission or finding of any truthfulness to such accusation – is somehow | fraud against Abby and to "evaluate all of the circumstances under which the defendant acted."[8] This is especially true given how similar the frauds were in time and form. This evidence shows that Dr. Jain a made false promise to Lennox Partners in June 2015 for a 1.5% equity warrant that Dr. Jain later dishonored after AROG reached Phase III and Lennox had prepared its IPO plan. If Dr. Jain is willing to intentionally lie to Lennox Partners to ensure that AROG maintains exclusive control over AROG's equity and any growth in the value of that equity through a warrant,[9] Abby can show that Dr. Jain is willing to intentionally lie to him to maintain exclusive control over the financial growth of AROG. Like Abby's fraud claim, Dr. Jain reneged on his promises to Lennox after AROG reached Phase III and after Lennox had finished their work of preparing an IPO plan.

Plaintiff incorporates by reference his Motion In Limine [ECF No 182].

The statements made by Richard Squires constitute an admission by adoption by Dr. Jain.[10] |

---

[8]      *Waste Mgmt. v. River Birch*, 920 F.3d 958, 967 (5th Cir. 2019).

[9]      An equity warrant is a right to purchase a company's stock at a set strike price. Here, the strike price was $3 million. This means that Lennox could purchase AROG's stock as if it were valued at $200 million. So, if AROG's value exceeded $200 million at the time of the IPO or within the following five years thereafter, Lennox could buy the stock at $3 million and immediately sell it for a profit. The equity warrant was, in essence, an agreement to share in AROG's future growth, if any.

[10]      Fed. R. Evid. 801(d)(2)(B); *see also U.S. v. Central Gulf Lines, Inc.*, 974 F.2d 621, 628 (5th Cir. 1992) (holding that "survey reports were also admissible as admissions by a party opponent" because the party opponent "never

| | | relevant and helpful to this Court and the jury in ascertaining the purported fraud of Defendants concerning the discrete issue in this case:  LTIUs granted to Ramachandran.  Federal Rules of Evidence 401, 404 and 408(a)(1). | They also constitute legally operative words. Richard Squires is making a contract offer; Dr. Jain is accepting the offer; and the contents of Squires email establishes the consideration.[11] |
| | | Additionally, the first email by Richard Squires contains hearsay because it is an out-of-court statement made by a non-party to this litigation used to prove the truth of the matter asserted to prove the truth of the matter asserted, i.e. that Mr. Squires did not want to participate in the AROG "stock option pool" or LTIUs.  Federal Rule of Evidence 801.  This email does not meet any of the exceptions to the hearsay rule.  Federal Rules of Evidence 801 and 803. | |
| | | Alternatively, if the court does find this and other proposed exhibits related to the Lennox dispute relevant, the probative value of this evidence would be substantially outweighed by the cause | |

---

objected to the survey reports prepared"); *Transbay Auto Serv., Inc. v. Chevron U.S. Inc.*, 807 F.3d 1113, 1118-22 (9th Cir. 2015).

[11]       *United States v. Jones*, 663 F.2d 567, 570-71 (5th Cir. 1981) (holding that "statement at issue is paradigmatic nonhearsay; it was offered because it contains threats made against officers of the federal courts, i.e., it contains the operative words of this criminal action.); *Osmanzada v. Eldridge Concrete Construction, Inc.*, Civil Action No. 3:10-cv-1, at *10 n.5 (W.D. Va. Mar. 15, 2011) ("legally operative words, or verbal acts, such as the words of permission in issue here, are not considered to fall within the definition of hearsay) (citing Christopher B. Mueller Laird C. Kirkpatrick, Federal Evidence § 8:18 (3d ed. 2003)).

| | | | |
|---|---|---|---|
| | | of unfair prejudice to Defendants and the high likelihood that this evidence will mislead the jury.   Essentially, allowing this exhibit would cause there to be a "trial within a trial" regarding the proposed issues and settlement between Lennox, Richard Squires, Tyler Brous and Dr. Jain. Federal Rule of Evidence 403. | |
| 20 | Tyler Brous Business Card for AROG | This is not relevant to the case as it has been clearly established through depositions that Mr. Brous was not an employee of AROG.  If this is found relevant, it's probative value would be substantially outweighed by the confusion it would cause the jury as to Mr. Brous prior part-time consultancy relationship to Dr. Jain and AROG. Federal Rules of Evidence 401 and 403.

Furthermore, Mr. Brous is party to a Settlement Agreement and Release with a confidentiality clause as to the matter and shall not reveal any non-public information regarding AROG or Dr. Jain.  Federal Rule of Evidence 408(a)(1). | This evidence is relevant because it shows that Tyler Brous was deeply committed to AROG as part of his work preparing for an IPO. |
| 21 | AROG's Settlement Agreement and Release with Lennox Capital | *See* Exhibit 19 Objection, such objections are incorporated to this proposed Exhibit 21 objection as well. | Plaintiff offers Dr. Jain's other acts of fraud because it is "**intrinsic**" evidence necessary to "complete the story" of Dr. Jain's fraud against Abby and to |

| | | | |
|---|---|---|---|
| | Partners (Dated 2/28/2018) | Note also that although Plaintiff filed this proposed exhibit with the dollar value of the settlement redacted, he failed to exercise such care in his Motion in Limine where he specifies the dollar figure of the settlement amount [See Dkt. 182 at p. 19].<br><br>The Defendants, together with Lennox and related parties to this settled dispute, have now - for at least the second time in this litigation – been deprived of their bargained-for confidentiality (see Section 4.2 of this proposed exhibit, whereby the "Parties agree to keep the terms and existence of this Agreement confidential . . . .") [Dkt. No. 113 at p. 14], where the dollar figure of the Lennox settlement is disclosed by Plaintiff in his Opposition to Defendants' Motion for Summary Judgment).<br><br>Indeed, such settlement figure was agreed among Plaintiff's counsel and Defendants' counsel to remain confidential during Dr. Jain's deposition an | "evaluate all of the circumstances under which the defendant acted."[12] This is especially true given how similar the frauds were in time and form.<br><br>This settlement is relevant because it was executed on February 28, 2018 and Dr. Jain began to implement Tyler Brous' IPO plan in March 2018. This shows that Dr. Jain canceled the early IPO in 2016 to avoid paying the two parties that had pending claims: Lennox and Abby. At this point, Abby had moved to California without any warning that he would file a lawsuit.<br><br>To support this argument, Plaintiff incorporates by reference his Motion In Limine on this matter [ECF No. 182].<br><br>Moreover, this document also shows a pattern by Dr. Jain to dishonor his promises only to seek settlement to pay a fraction of what he promises. Then he utilizes confidentiality agreements to cover his deceitful actions. These confidentiality agreements are against public policy. With this trial, the plaintiff has a right to present his case with all admissible and probative evidence.[13] |

---

[12]     *Waste Mgmt. v. River Birch*, 920 F.3d 958, 967 (5th Cir.  2019).

[13]     *United States v. Mandujano*, 425 U.S. 564, 572 (1976) ("The public has a right to every man's evidence"); *United States v. Havens*, 446 U.S. 620, 626 (1980) ("There is no gainsaying that arriving at the truth is a fundamental goal of our legal system. ")

| | | | |
|---|---|---|---|
| | | agreement that Plaintiff has repeatedly ignored throughout this litigation.<br><br>Finally. Defendants object to this exhibit because it is irrelevant to the issues in this lawsuit because it involves parties that are not a part of this litigation (Shraman South Asian Museum and Learning Center Foundation, and Jain Investments, LLC) and involves "various claims" against the parties which includes issues related to real estate that Lennox assisted Shraman South Asian Museum and Learning Center Foundation with purchasing that are not related to this case. Essentially, allowing this exhibit would cause there to be a "trial within a trial" regarding the proposed exhibit.  This would lead to the Defendants needing to relitigate a settled matter and call witness that are completely unrelated to this case. Introduction of this evidence would prejudice Defendants, cause jury confusion and waste the Court's time.  Federal Rule of Evidence 403. | |
| 22 | AROG's 2014 Conversion Action by Unanimous Written Consent (Dated 9/29/14) | | |
| 23 | Plaintiff's Authorized PTO | | |

| | | | |
|---|---|---|---|
| | Request for December 2016 | | |
| 24 | 2015 Employment Verification Letter for Plaintiff (Dated 9/9/2015) | | |
| 25 | 2015 Continued Employment Verification Letter Issued by Defendant AROG for Plaintiff (Dated 9/16/2015) | | |
| 26 | AROG's H-1B Support Statement (Dated August 26, 2016) | | |
| 27 | 2015 Continued Employment Verification Letter Issued by Defendant AROG for Plaintiff (dated 9/16/2015, but date should have read 9/16/2016) | | |
| 28 | 2016 Continued Employment Verification Letter Issued by Defendant AROG for Plaintiff (Dated 12/16/2016) | | |
| 29 | I-29 Document by Edward McDonald | | |
| 30 | Defendant AROG's Draft Separation Agreement and General Release ($79,410 offer) | | **Plaintiff will agree to withdraw this exhibit.** |
| 31 | Defendant AROG's Draft Settlement Agreement and General Release ($65,000 offer) | | **Plaintiff will agree to withdraw this exhibit.** |

| 32 | Email from Plaintiff to Defendant Dr. Jain about broken laptop (Dated 12/22/2016) | | |
|----|----|----|----|
| 33 | Email from Plaintiff to Defendant AROG regarding Visa Stamping Request (Dated 12/27/2016) | | |
| 34 | DeMaggio Lawsuit against Dr. Jain and Dava re: Cancellation of "Vested" LTIU Units (Dated 2/19/13) | This prior lawsuit between Plaintiff Counsel's previous clients, Annemieke DeMaggio and Anthony DeMaggio (the "DeMaggios") and Dava Oncology LP ("Dava"), a separate company from AROG and not a named Defendant in this lawsuit, is completely irrelevant to this case. Additionally, this case involves another defendant, Mark Levonyak, who is not a party to this litigation, which makes this exhibit even more irrelevant. Federal Rule Evidence 401.<br><br>Mr. Anthony DeMaggio is a former consultant for Dava and never provided services for AROG.   Mrs. Annemieke DeMaggio, PhD's employment relationship with Dava ended over 9 years ago; she also never provided services for AROG. Therefore, this proposed exhibit introduces a | |

lawsuit and parties that is wholly unrelated to the remaining fraud claim related to AROG's 2010 LTIU plan.  If the Court finds this relevant, the probative value is substantially outweighed by the likelihood of unfair prejudice to Defendants, mislead and confuse the jury, and waste time to weigh the merits of an unrelated matter whereby Dr. Jain has admitted no wrongdoing, AROG is not involved at all, and that has been settled by separate agreement.  Federal Rule of Evidence 403.

In sum, Plaintiff is trying to mislead the Jury and build his case on previous acts instead of focusing on the facts specific to this case to prove his case.  Further, the settlement has a strict confidentiality clause between the parties and anything regarding such dispute and settlement should remain confidential.  Federal Rules of Evidence 401, 403, and 404.

Finally. Defendants object to this exhibit because it is irrelevant to the issues in this lawsuit because it involves parties that are not a part of this litigation, the DeMaggios, Jain Investments, LLC and Mark Levonyak and it

| | | | |
|---|---|---|---|
| | | involves "various claims" against the parties that are not related to this case. Essentially, allowing this exhibit would cause there to be a "trial within a trial" regarding the proposed exhibit. This would lead to the Defendants needing to relitigate a settled matter and call witnesses that are completely unrelated to this case. Introduction of this evidence would prejudice Defendants, cause jury confusion and waste the Court's time. Federal Rule of Evidence 403. | |
| 35 | | Exhibit 1 to DeMaggio Lawsuit: DeMaggio's Contract where AROG affirms her "vested" units | This prior lawsuit between Plaintiff Counsel's previous client and Dava, a separate company from AROG and not included in this lawsuit, is completely irrelevant to this case. Counsel has not only disclosed information he was privileged to based on representing the DeMaggios, all the alleged facts, circumstances, and Settlement Agreement and Term Sheet are now disclosed to the public. Mr. Anthony DeMaggio is a former consultant for Dava and never provided services for AROG. Mrs. Annemieke DeMaggio, PhD's employment relationship with Dava ended over 9 years ago; she also never provided | Plaintiff offers Dr. Jain's other acts of fraud because it is "**intrinsic**" evidence necessary to "complete the story" of Dr. Jain's fraud against Abby and to "evaluate all of the circumstances under which the defendant acted."[14]<br><br>Dr. Jain falsely claims that he adopted the 2014 LTIU Plan to "help" Abby avoid a tax liability. Dr. Jain then had Greg Fisher talk with Abby to convince him to convert his LTIUs from the 2010 LTIU Plan to the 2014 LITU Plan.<br><br>But the real reason for Dr. Jain's adoption of the 2014 LTIU Plan was the DeMaggio lawsuit. For almost all of 2013, Dr. Jain was involved in this litigation where DeMaggio claims that Dr. Jain falsely promised her LTIUs to |

[14]     *Waste Mgmt. v. River Birch*, 920 F.3d 958, 967 (5th Cir. 2019).

| | | services for AROG. The Settlement Agreement and Term Sheet has a strict confidentiality clause and anything regarding such dispute and settlement should remain confidential. Apart from the fact that disclosure of this Settlement Agreement and Term Sheet would discourage Dr. Jain and other corporate entities to negotiate and settle claims, if this is found relevant this would only confuse the jury as these matters reference different companies, additional parties who are not party to this suit and have never been involved in this suit, and different LTIU plans. Plaintiff is trying to mislead the jury and build his case on previous acts instead of focusing on the facts specific to this case. Federal Rules of Civil Procedures 401, 403, and 404.

Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801. This exhibit does not | join Dava as a founder. When she was finished with her work, Dr. Jain terminated her without cause and canceled her LTIUs. It was settled by the end of 2013 and paid sometime in 2014. Within eight months or so, Dr. Jain adopted the 2014 LTIU Plan that eliminated all vested rights contained in the 2010 LITU Plan.

Without the facts of this lawsuit, a jury will not understand the circumstances of why Dr. Jain adopted the 2014 LTIU Plan to trick Abby into accepting a different plan that eliminated critical rights. A reasonable jury |

| | | | |
|---|---|---|---|
| | | meet any of the exceptions to the hearsay rule. *Id.*<br><br>Finally, Defendants object to this exhibit because it is irrelevant to the issues in this lawsuit because it involves parties that are not a part of this litigation, the DeMaggios, Jain Investments, LLC and Mark Levonyak and involves "various claims" against the parties that are not related to this case. Essentially, allowing this exhibit would cause there to be a "trial within a trial" regarding the proposed exhibit.  This would lead to the Defendants needing to relitigate a settled matter and call witness that are completely unrelated to this case. Introduction of this evidence would prejudice Defendants, cause jury confusion and waste the Court's time.  Federal Rule of Evidence 403. | |
| 36 | Settlement of DeMaggio Lawsuit where Dr. Jain agrees to pay DeMaggio $220,000 for the right to cancel her "vested" units under the LTIU Plan. | | **Plaintiff agrees to withdraw this exhibit.** |
| 37 | Defendant AROG's Independent Valuation by Bioscience | | |

| | | | |
|---|---|---|---|
| | Valuation (Dated 2/17/2012) | | |
| 38 | Defendant AROG's Independent Valuation by Bioscience Valuation (Dated 11/14/2014) | Defendants object to this exhibit as it contains hearsay and does not meet any of the exceptions to the hearsay rule.  Plaintiff is attempting to introduce this exhibit to prove a truth of the matter asserted, i.e., the value of AROG in 2014, as determined by a third-party.  Federal Rule of Evidence 801.

Defendants also object to this exhibit as being irrelevant.  Plaintiff is attempting to introduce this exhibit to prove the alleged value of AROG in February 2017 when Plaintiff was terminated.  Any alleged valuation of a company three (3) years before is irrelevant to this case and would prejudice the jury, cause confusion and be a waste of time.  Federal Rules of Evidence 401 and 403. | The 2014 Bioscience appraisal is admissible as an "adoptive admission" by AROG to establish that AROG was valued at $738 million in November 2014.[15] Under Fed. R. Evid. 801(d)(2)(B), Abby can establish that the 2014 Bioscience Appraisal is an opposing party's statement because "[AROG] manifested that it adopted or believe to be true."[16] Abby can establish an adoptive admission by showing the opposing "party acts in conformity with the contents of a document."[17] Or a party can establish an adoptive admission by showing the opposing party that relied "on a third-party document by submitting the document to another."[18] To illustrate, once a plaintiff provided the appraisal to a lender "in support of accomplishing its objective to secure a commercial loan—such an action constitutes an adoptive admission of the statements contained therein," it was an adoptive admission.[19] Here, Greg Fisher, AROG's CFO, testified that AROG provided the 2014 Bioscience Appraisal to Jain |

---

[15]    Fed. R. Evid. 801(d)(2)(B); *United States v. Jones*, 663 F.2d 567, 570-71 (5th Cir. 1981) (holding that "statement at issue is paradigmatic nonhearsay; it was offered because it contains threats made against officers of the federal courts, i.e., it contains the operative words of this criminal action.); *see also U.S. v. Central Gulf Lines, Inc.*, 974 F.2d 621, 628 (5th Cir. 1992) (holding that "survey reports were also admissible as admissions by a party opponent" because the party opponent "never objected to the survey reports prepared"); *Transbay Auto Serv., Inc. v. Chevron U.S. Inc.*, 807 F.3d 1113, 1118-22 (9th Cir. 2015).

[16]    Fed. R. Evid. 801(d)(2)(B).

[17]    *Transbay Auto Serv., Inc. v. Chevron U.S. Inc.*, 807 F.3d 1113, 1118 (9th Cir. 2015) ("party acts in conformity with the contents of a document")

[18]    *Transbay Auto Serv., Inc. v. Chevron U.S. Inc.*, 807 F.3d 1113, 1119 (9th Cir. 2015) ("courts have previously held that a party who relies on a third-party document by submitting the document to another")

[19]    Id.

| | | | |
|---|---|---|---|
| | | | Investments for a transaction involving the purchase of shares by Jain Investment, which was designed to fund AROG's operations, based on AROG's value at $738 million. Based on the actions of AROG to use the 2014 Bioscience Appraisal to effectuate this financial transaction of AROG's shares, the 2014 Bioscience Appraisal should be admitted by this Court as an adoptive admission that can be used to establish the Fair Market Value of AROG. |
| 39 | Published Article by Plaintiff, entitled *Crenolanib is active against models of drug resistant FLT3 ITD Acute Myeloid Leukemia* (Dated 7/9/2013) | | **Plaintiff agrees to withdraw this exhibit.** |
| 40 | Published Article by Plaintiff, entitled *Reversal of Acquired Drug Resistance in FLT3-Mutated Acute Myeloid Leukemia Cells via Distinct Drug Combination Strategies* (Dated 3/11/2014) | | **Plaintiff agrees to withdraw this exhibit.** |
| 41 | Defendant Dr. Jain Email to Eric Kim concerning AROG's intent to do an IPO in 2016 (Dated 9/13/2015) | This email chain is between Dr. Jain, who copied Dr. Merrick Reese, an advisor for AROG, and Edward McDonald, AROG's General Counsel, with Dr. Erik Kim, a potential candidate for Chief Medical Officer of | This email establishes Dr. Jain's intent to do an IPO as early as September 2015. It shows that AROG was working on an IPO for almost two years before Dr. Jain decided to dishonor his promises to Lennox and Abby. This is relevant to show that Dr. Jain canceled this IPO because he did |

| | | AROG, concerning high-level terms of an unspecified quantity of potential equity incentives he could receive in connection with a potential IPO of AROG to be made in connection if it consummated an IPO, with an anticipated timeframe of January 2016.<br><br>The discussions between Dr. Jain and Dr. Kim regarding potential equity if an IPO where to occur and if Dr. Kim where to join AROG have no bearing on the one remaining fraud claim left regarding Ramachandran's LTIUs.  The remaining claim is focused on actions in 2012 surrounding Plaintiff's Employment Agreement and Award Agreement. Any discussions that occurred after that surrounding future possible employees and what, if any, equity he or she would potentially have in a public company have no bearing on Ramachandran's LTIUs. Alternatively, if the Court finds this as relevant, its probative value is substantially outweighed by the fact it would confuse a jury as there is no mention of an LTIU plan, these are only negotiations between a company and a potential | not want to honor his promises to Abby and Lennox. |

| | | | |
|---|---|---|---|
| | | new executive, and further this doesn't reference any actual new plan that would have been in place if an IPO did go through. Federal Rules of Evidence 401 and 403.<br><br>Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801.  This exhibit does not meet any of the exceptions to the hearsay rule.  *Id.* | |
| 42 | AROG S-1 Filed on August 30, 2018 | Any S-1 filed for a potential IPO for AROG in 2018 is irrelevant as this was over a year after Ramachandran no longer worked at AROG.  The Court has already ruled there was no triggering event with regard to the 2010 LTIU Plan.  Federal Rules of Evidence 401 and 403. | This exhibit is an adoptive admission because it was filed with the SEC as part of AROG' plan to go public. It is relevant to show that Dr. Jain and AROG canceled the 2018 IPO to avoid honoring their agreement with Abby. In this document, which was filed by AROG on August 30, 2018, the structure of the IPO worked as constituted a Sale of the Company under the 2010 LTIU Plan, which would have triggered a payout on Abby's vested units still outstanding. In this S-1, there is no disclosure of Abby's lawsuit. A reasonable jury could infer that this was AROG's plan before it learned about Abby's lawsuit to press his rights in his outstanding units that vested in the same way that DeMaggio |

| | | | |
|---|---|---|---|
| | | | pressed her rights in her vested units. The next exhibit show how AROG changed its plan drastically after it learned about Abby's lawsuit, eliminating the change in ownership that would have triggered a Sale of the Company. |
| 43 | AROG S-1 Filed on September 28, 2018 | Any S-1 filed for a potential IPO for AROG in 2018 is irrelevant as this was over a year after Ramachandran no longer worked at AROG. The Court has already ruled there was no triggering event with regard to the 2010 LTIU Plan.  Federal Rule of Evidence 401 and 403 | This exhibit is an adoptive admission because it was filed with the SEC as part of AROG's plan to go public. It is relevant to show that AROG canceled the 2018 IPO to avoid honoring its promises to Abby under the 2010 LTIU Plan. While the initial plan was filed with the SEC without any disclosure of Abby's lawsuit, this S-1 was filed with AROG disclosing Abby's lawsuit. A jury could infer that AROG changed its IPO structure to avoid triggering a Sale of the Company under the 2010 LTIU Plan, which would have triggered a payout to Abby on his outstanding vested units. It is also relevant to show that Dr. Jain terminated the IPO within a month to avoid a trigger from doing the IPO under section 6 of the 2010 LTIU Plan. |
| 44 | AROG's United States Patent No. 9023880 (Dated May 5, 2015) | *See* Defendants' objection to Exhibit 6.  Defendants incorporate by reference their arguments for this exhibit. | The Patent is relevant to show that the claims incorporated into the patent include the work done during the collaboration between Dr. Shah and Abby and thus were not the "ideas" of Dr. Jain because he was not part of this collaboration. It proves that Dr. Jain intended to defraud UCSF out of its joint ownership in the Crenolanib so that AROG could maintain exclusive control of this asset.  The timing of the Crenolanib Patents also supports |

| | | | Dr. Jain's motivation to start the IPO process in 2015. |
|---|---|---|---|
| 45 | AROG's United States Patent No. 9101624 (Dated August 11, 2015) | *See* Defendants' objection to Exhibit 6.  Defendants incorporate by reference their arguments for this exhibit. | See response to Exhibit 44. |
| 46 | AROG's United States Patent No. 9480 (Dated November 1, 2016) | *See* Defendants' objection to Exhibit 6.  Defendants incorporate by reference their arguments for this exhibit. | See response to Exhibit 44. |
| 47 | Defendant AROG Email to ESG Support Team to authorize John Eckardt to electronically sign on behalf of AROG | This unsigned letter (not an email) was drafted for the limited purpose of notifying the Electronic Submission Gateway (ESG) support team at the United States Food and Drug Administration (FDA) that certain individuals could submit regulatory documents to the FDA with electronic signatures pursuant to the requirements of Sec. 11.100 of Title 21 (Food and Drugs) of the Code of Federal Regulations. <br><br> Of note, Sec. 11.100(c) states the purpose of the draft letter:  "Persons using electronic signatures shall . . . certify to the agency that **the electronic signatures in their system** . . . are intended to be the legally binding equivalent of traditional handwritten signatures." (emphasis added). <br><br> In addition, Sec. 11.100(c)(1) requires signature before such | Dr. Jain testified that John Eckardt was not authorized to sign Abby's PTO because he was not allegedly authorized to sign on behalf of AROG. This document refutes Dr. Jain's testimony. |

| | | authorization for electronic signatures within the FDA's Electronic must first submit such certification "in paper form and **signed with a traditional handwritten signature** to the [relevant FDA office]" (emphasis added). It is clear that this draft letter is not signed, and Plaintiff has not offered evidence that any such signed version of the draft exists or was ever submitted to the FDA.<br><br>Therefore, this unsigned draft letter to the FDA for the limited purpose of permitting electronic signatures for regulatory submissions is in no way accurate or relevant for the envisioned purpose (that Dr. John Eckardt had blanket electronic signature authority) and, if the Court found such exhibit relevant, it would almost certainly confuse the jury due to its stated limited purpose and the lack of any signature. Federal Rules of Evidence 401 and 403. | |
| 48 | Plaintiff's Long Term Incentive Plan Award Agreement (Date July 30, 2012) (185,000 Units) | | |
| 49 | Plaintiff's Long Term Incentive Plan Award Agreement (Date | | |

| | | | |
|---|---|---|---|
| | September 16, 2011) (10,000) | | |
| 50 | Plaintiff's Long Term Incentive Plan Award Agreement (Date January 28, 2011) (5,000 Units) | | |
| 51 | Plaintiff Confidentiality Agreement with Dava (Dated February 2, 2010) | | |
| 52 | Plaintiff Employment Contract (Dated December 1, 2010) | | **Plaintiff agrees to withdraw this exhibit.** |
| 53 | Email from Plaintiff to Dr. Dr. Neil Shah concerning follow up information from AACR meeting | *See* Defendants' objection to Exhibit 6. Defendants incorporate by reference their arguments for this exhibit. | In this email, Abby says it was a pleasure to meet Dr. Shah at AARC. Abby then provides Dr. Shah with the information on Crenolanib that Abby was presenting at AARC. And then Abby indicates AROG's interest in discussing "the potential pre-clinical development of Crenolanib as a Flt3 inhibitor." The development of this idea was the primary concept incorporated into the Crenolanib Patents. This shows that this idea started in a conversation between Abby and Dr. Shah at AARC in April 2011.<br><br>Plaintiff incorporates by reference his Motion In Limine to show that this other act of fraud is admissible intrinsic evidence [ECF No. 182]. |
| 54 | Email from Plaintiff to Dr. Shah re Millipore scan (5-3-2011) | *See* Defendants' objection to Exhibit 6. Defendants incorporate by reference their arguments for this exhibit. | In this email, Abby makes a request from Dr. Shah to prepare a "research plan" and to identify how much Crenolanib he will need for his testing.<br><br>Plaintiff incorporates by reference his Motion In Limine to show that |

| | | | this other act of fraud is admissible intrinsic evidence [ECF No. 182]. |
|---|---|---|---|
| 55 | Email from Dr. Shah to Plaintiff concerning research plan for testing Crenolanib (Dated 5/7/2011) | *See* Defendants' objection to Exhibit 6.  Defendants incorporate by reference their arguments for this exhibit.  Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801.  This exhibit does not meet any of the exceptions to the hearsay rule.  *Id.* | In this email, Dr. Shah sends Abby the research plan for his work. Dr. Shah prepared this research plan; it was not prepared by Dr. Jain or anyone else at AROG. Dr. Shah does not copy anyone else on this email, showing that Dr. Shah's primary collaborator with AROG was Abby. Dr. Shah prepared this research plan without an MTA in place to assign any intellectual property rights to AROG.  This document is a business record because these types of emails were regularly maintained in the regular course of business. Abby will testify that he would conduct business by email on projects and maintain the emails for reference back to the projects (the "Business Records Exception").[20] |
| 56 | Email from Plaintiff to Dr. Shah concerning research plan for testing Crenolanib (Dated 5/11/2011) | *See* Defendants' objection to Exhibit 6.  Defendants incorporate by reference their arguments for this exhibit.  Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in | After Abby receives Dr. Shah's research plan, he sends Dr. Shah the Crenolanib he needs to conduct the experiments for his plan. This is relevant because Dr. Jain claims that Dr. Shah never did any testing with AROG's Crenolanib.  Business Record Exception. |

---

[20]     *Soni v. Solera Holdings, LLC*, No. 21-10428, at *3 (5th Cir. May 4, 2022) ("One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity.")

| | | | |
|---|---|---|---|
| | | an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801. This exhibit does not meet any of the exceptions to the hearsay rule. *Id.* | |
| 57 | Email from Dr. Shah to Plaintiff noting his intent to start testing and noting the lack of a "CDA or MTA" applicable to the testing (Dated 5/19/2011) | *See* Defendants' objection to Exhibit 6. Defendants incorporate by reference their arguments for this exhibit.<br><br>Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801. This exhibit does not meet any of the exceptions to the hearsay rule. *Id.* | In this email, Dr. Shah acknowledges that there was no CDA (re: confidentiality) or MTA (re: intellectual property rights) in place before AROG shipped the Crenolanib. He notes that he is not certain how to proceed and copies in UCSF's attorney for guidance.<br><br>Business Record Exception. [21] |
| 58 | Email from Dr. Shah to Plaintiff to discuss Plaintiff's knowledge about Crenolanib re: a KIT inhibitor (Dated 5/20/2011) | *See* Defendants' objection to Exhibit 6. Defendants incorporate by reference their arguments for this exhibit.<br><br>Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in | Dr. Shah reiterates the importance of procuring the proper legal documents before exchanging any ideas. This is relevant to show that Dr. Shah believes the ideas he is developing will belong to UCSF and that he does not want to proceed unless they have an opportunity to protect their rights in his intellectual property. This is relevant for a jury to infer that Dr. Shah—as opposed to Dr. Jain— was the true inventor on the ideas incorporated into the Crenolanib Patents. |

---

[21] *Soni v. Solera Holdings, LLC*, No. 21-10428, at *3 (5th Cir. May 4, 2022) ("One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity.")

| | | | |
|---|---|---|---|
| | | an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801. This exhibit does not meet any of the exceptions to the hearsay rule. *Id.* | Business Record Exception.[22] |
| 59 | Email from Plaintiff to Dr. Shah and others re: AROG's standard MTA for transfer of Crenolanib (Dated 5/24/2011) | *See* Defendants' objection to Exhibit 6. Defendants incorporate by reference their arguments for this exhibit.<br><br>Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801. This exhibit does not meet any of the exceptions to the hearsay rule. *Id.* | In this email, AROG sends UCSF its standard MTA (concerning, *inter alia*, intellectual property rights) to cover the Crenolanib that AROG sent to Dr. Shah. This email is relevant to show that AROG needs this MTA in place to acquire the legal rights to Dr. Shah's patent ideas. A reasonable jury could infer that the attempt by AROG's attorney to procure Dr. Shah's intellectual property rights is an admission by AROG that it knows that the Crenolanib ideas belong to Dr. Shah as the inventor.<br><br>Business record exception. [23] |
| 60 | Email from Dr. Shah to Plaintiff concerning the status of the exchanged legal documents (Dated 6/10/2011) | *See* Defendants' objection to Exhibit 6. Defendants incorporate by reference their arguments for this exhibit.<br><br>Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent | This email confirms that Dr. Shah is working with Abby on coordinating the delivery of Dr. Shah's testing results. As part of this email, Dr. Shah implies that there needs to be some legal documents in place before they move forward. This email shows that Dr. Shah and UCSF believe they have inventorship rights over Dr. Shah's work. This document will also support an inference that Dr. Shah will not release his testing until there is some legal protection in place. |

[22]  *Soni v. Solera Holdings, LLC*, No. 21-10428, at *3 (5th Cir. May 4, 2022) ("One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity.")
[23]  *Soni v. Solera Holdings, LLC*, No. 21-10428, at *3 (5th Cir. May 4, 2022) ("One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity.")

| | | statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801. This exhibit does not meet any of the exceptions to the hearsay rule. *Id.* | Business record exception. [24] |
|---|---|---|---|
| 61 | Email from Dr. Shah to Plaintiff wherein Dr. Shah notes concerns about discussing testing results until legal agreements are in place (Dated 6/10/2011) | *See* Defendants' objection to Exhibit 6. Defendants incorporate by reference their arguments for this exhibit.<br><br>Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801. This exhibit does not meet any of the exceptions to the hearsay rule. *Id.* | This email shows that Dr. Shah will not release his testing until there is sufficient legal documentation in place: "I hope the MTA can be settled by then. I will check with the people on my end, but I suspect they will discourage me from having any discussions until the legal issues have been formally settled." By showing that Dr. Shah is holing the key information, a jury could infer that it was Dr. Shah's ideas and testing—as opposed to Dr. Jain—that contributed the ideas that were incorporated into the Crenolanib Patents. A reasonable jury could infer that Dr. Shah is holding the key information that is subsequently included into the Crenolanib Patents and, as a result, AROG cannot share in those commercialization rights related to Dr. Shah's work without an MTA.<br><br>This document is a business record because these types of emails were regularly maintained in the regular course of business. Abby will testify that he would conduct business by email on projects and maintain the emails for reference back to the projects. [25] |

[24]        *Soni v. Solera Holdings, LLC*, No. 21-10428, at *3 (5th Cir. May 4, 2022) ("One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity.")
[25]        *Soni v. Solera Holdings, LLC*, No. 21-10428, at *3 (5th Cir. May 4, 2022) ("One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity.")

| | | | |
|---|---|---|---|
| 62 | Email from Stephanie Thornhill to Marguerite concerning execution of Confidentiality Agreement (Dated 6/16/2011) | *See* Defendants' objection to Exhibit 6. Defendants incorporate by reference their arguments for this exhibit.<br><br>Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801. This exhibit does not meet any of the exceptions to the hearsay rule. *Id.* | In this exhibit, AROG's attorney sends a an executed CDA (re confidentiality) to UCSF's attorney. This is relevant because UCSF would not release Dr. Shah's testing without this legal document. A reasonable jury could infer that Dr. Shah was the inventor on the Crenolanib Patents because he was holding the information that could not be released until some legal document was put in place to protect it. But the CDA only addressed confidentiality; it did not cover intellectual property rights.<br><br>Business record exception. [26] |
| 63 | Email from Plaintiff to Dr. Shah notifying Dr. Shah that Dr. Jain cannot join in the discussion of his testing results because Dr. Jain "is currently in India" (Dated 6/16/2011) | *See* Defendants' objection to Exhibit 6. Defendants incorporate by reference their arguments for this exhibit.<br><br>Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801. This exhibit does not meet any of the exceptions to the hearsay rule. *Id.* | **"No, Dr. Jain is currently in India."** This email confirms that Dr. Jain is in India while Abby and Dr. Shah are working on this collaboration concerning Crenolanib's target of Flt-3. This is relevant to show that Dr. Jain had no inventorship claims to the work done by Dr. Shah. This is important to show the timing of Dr. Jain's involvement **after** the ideas were tested, making it intentionally false for Dr. Jain to claim that he invented something that other people were working on while he was in India. It is one thing to say that AROG owns the idea that may have been developed without Dr. Jain's involvement; it is quite another to falsely say that Dr. Jain actually invented it. |

---

[26]     *Soni v. Solera Holdings, LLC*, No. 21-10428, at *3 (5th Cir. May 4, 2022) ("One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity.")

| | | | |
|---|---|---|---|
| | | | Business record exception.[27] |
| 64 | Email from Plaintiff to Dr. Shah concerning "great news" re: Crenolanib Testing (Dated 6/17/2011) | *See* Defendants' objection to Exhibit 6.  Defendants incorporate by reference their arguments for this exhibit. | This document proves that Dr. Shah was the inventor of the primary idea incorporated into the Crenolanib Patents: "**Dear Dr. Shah, Thank you very much for sharing with us the great news about efficacy of crenolanib against both the FLT3 ITD mutations and the FLT3 D835 mutations**." Because Dr. Jain is copied on this email, this document also proves that Dr. Jain was fully aware that Dr. Shah was the inventor on the ideas in the Crenolanib Patent. When he intentionally withheld this information from AROG's patent attorney, he committed patent fraud so that AROG could maintain exclusive control of the Crenolanib Patents. Because of the lack of an MTA, AROG could not maintain exclusive control of these patents without Dr. Jain misleading AROG's patent attorney. |
| 65 | Emails between Plaintiff and Dr. Shah re Crenolanib and KIT (6-23-2011) | *See* Defendants' objection to Exhibit 6.  Defendants incorporate by reference their arguments for this exhibit.  Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent | This document shows that Dr. Shah and Abby are considering a new collaboration on another idea related to Crenolanib. Dr. Jain is again not part of this collaboration.  This document is a business record because these types of emails were regularly maintained in the regular course of business. Abby will testify that he would conduct business by email on projects and maintain the emails |

---

[27]     *Soni v. Solera Holdings, LLC*, No. 21-10428, at *3 (5th Cir. May 4, 2022) ("One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity.")

| | | | |
|---|---|---|---|
| | | statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801. This exhibit does not meet any of the exceptions to the hearsay rule. *Id.* | for reference back to the projects.[28] |
| 66 | Email from Plaintiff to Dr. Shah concerning additional testing of Crenolanib ideas (Dated 6/23/2011) | *See* Defendants' objection to Exhibit 6. Defendants incorporate by reference their arguments for this exhibit.<br><br>Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801. This exhibit does not meet any of the exceptions to the hearsay rule. *Id.* | This document shows that Abby is following up with Dr. Shah on his successful testing results. Even though Dr. Jain was copied on the email about the successful results, Dr. Shah continues to work directly with Abby.<br><br>Business record exception.[29] |
| 67 | Email from Plaintiff to Dr. Shah responding to Dr. Shah's request for additional testing of Crenolanib (Dated 6/25/2011) | *See* Defendants' objection to Exhibit 6. Defendants incorporate by reference their arguments for this exhibit.<br><br>Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove | Dr. Shah continues with his work with Abby concerning the testing of Flt-3. This is relevant to show that Dr. Jain is not actively engaged with Dr. Shah on developing these ideas related to Ftl-3.<br><br>Business record exception.[30] |

[28]   *Soni v. Solera Holdings, LLC*, No. 21-10428, at *3 (5th Cir. May 4, 2022) ("One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity.")
[29]   *Soni v. Solera Holdings, LLC*, No. 21-10428, at *3 (5th Cir. May 4, 2022) ("One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity.")
[30]   *Soni v. Solera Holdings, LLC*, No. 21-10428, at *3 (5th Cir. May 4, 2022) ("One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity.")

| | | | |
|---|---|---|---|
| | | the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801.  This exhibit does not meet any of the exceptions to the hearsay rule.  *Id.* | |
| 68 | Email from Dr. Shah to Plaintiff where Dr. Shah provides Plaintiff with a copy of the updated slide deck of the Crenolanib data (Dated 7/7/2011) | *See* Defendants' objection to Exhibit 6.  Defendants incorporate by reference their arguments for this exhibit.<br><br>Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801.  This exhibit does not meet any of the exceptions to the hearsay rule.  *Id.* | Dr. Shah is providing an update to Abby on his work related to Ftl-3.<br><br>Business record exception. [31] |
| 69 | Email from AROG's Hemanshu Shah to Allison Formal concerning Dr. Shah testing of Crenolanib (Dated 7/11/2011) | *See* Defendants' objection to Exhibit 6.  Defendants incorporate by reference their arguments for this exhibit.<br><br>Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove | AROG's admission that Dr. Shah was the inventor.<br><br>In this email, AROG's COO, Hemanshu Shah, admits that Dr. Shah was the inventor on the ideas incorporated into the Crenolanib Patents: "While the presentation does include some data on the inhibition of Flt -3 including D835 mutant Flt -3, **most of the data on inhibition** |

---

[31]    *Soni v. Solera Holdings, LLC*, No. 21-10428, at *3 (5th Cir. May 4, 2022) ("One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity.")

| | | | |
|---|---|---|---|
| | | the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801.  This exhibit does not meet any of the exceptions to the hearsay rule.  *Id.* | **of both wild -type and various different mutations of Flt -3 were developed by Dr. Neil Shah and are still confidential.**"

The statement by AROG's Hemanshu Shah is a party opponent admission by one of AROG's officers and is not hearsay. 801(d)This can be offered for the truth of the matter asserted therein.

Business record exception. [32] |
| 70 | Email from AROG's Hemanshu to Dr. Neil Shah indicating that AROG could not agree with UCSF on the "IP sections" in an MTA agreement. (Dated 7/19/2011) | *See* Defendants' objection to Exhibit 6.  Defendants incorporate by reference their arguments for this exhibit.

Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801.  This exhibit does not meet any of the exceptions to the hearsay rule.  *Id.* | AROG declares its motive and intent to maintain exclusive control over the ownership of the Crenolanib Patents:

"Our consistent position with all collaborators, including the NCI, has been that the work in each MTA is very defined, unlikely to result in new IP and we therefore agree that either both parties will not file IP and are free to publish, or **if there is IP, AROG should have fully paid, royalty -free rights to develop and commercialize (with the right to sub -license) our molecule.**"

The statement by AROG's Hemanshu Shah is a party opponent admission by one of AROG's officers and is not hearsay. This can be offered for the truth of the matter asserted therein.[33] |

---

[32]     *Soni v. Solera Holdings, LLC*, No. 21-10428, at *3 (5th Cir. May 4, 2022) ("One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity.")
[33]     Fed. R. Evid. 801(d)(2)(D).

| | | | |
|---|---|---|---|
| | | | Business record exception. [34] |
| 71 | Cease & Desist Letter by AROG's Hemanshu Shah while parties continue to negotiate an MTA (Dated 7/29/2011) | *See* Defendants' objection to Exhibit 6.  Defendants incorporate by reference their arguments for this exhibit. | See response to No. 6. |
| 72 | Email from AROG's attorney, Stephanie Thornhill, to Dr. Shah notifying Dr. Shah about the Cease & Desist Letter sent by Dr. Jain on August 8, 2011 (Dated 8/9/2011) | *See* Defendants' objection to Exhibit 6.  Defendants incorporate by reference their arguments for this exhibit.  Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801.  This exhibit does not meet any of the exceptions to the hearsay rule. *Id.* | AROG admits that it has failed to obtain an MTA for the rights to Dr. Shah's patent ideas.  The statements made by AROG's attorney are party opponent admissions. [35] |
| 73 | Email from Dr. Shah about MTA and protection of UCSF) (7/21/2011) | | **Plaintiff withdraws this exhibit.** |
| 74 | Email between attorneys re Dr. Shah's work without MTA) (7/11/2011) | *See* Defendants' objection to Exhibit 6.  Defendants incorporate by reference their arguments for this exhibit. | In this email, AROG's staff counsel acknowledges that AROG has failed to procure the intellectual property rights associated with Dr. Shah's ideas. This is information that was |

[34]     *Soni v. Solera Holdings, LLC*, No. 21-10428, at *3 (5th Cir. May 4, 2022) ("One of the exceptions to hearsay's being inadmissible is if it constitutes a record of regularly-conducted activity.")
[35]     Fed. R. Evid. 801(d)(2)(D).

| | | Finally, this exhibit contains hearsay as it contains statements by non-parties to this litigation that is attempting to be introduced to prove the truth of the matter asserted – that Dr. Jain makes fraudulent statements to employees in an attempt to retain them and benefit Defendants. Federal Rule of Evidence 801.  This exhibit does not meet any of the exceptions to the hearsay rule.  *Id.* | concealed from AROG's patent attorney that establish Dr. Jain's fraud.<br><br>The statements made by AROG's attorney are party opponent admissions. [36] |
| 75 | Email between Abby and Dr. Shah re MTA) (5/23/2011) | | **Plaintiff withdraws this exhibit.** |
| 76 | Abby email to Jain re 2015 Visa Stamping for International Travel (9/16/2015) | | |
| 77 | Abby employment contract with AROG (1/5/2011) | | **Plaintiff withdraws this exhibit.** |

### III.    Plaintiff's Objections to Defendants' Witness List

| Witness List | Concise non-argumentative summary of witness and connection to facts | Concise non-argumentative identification of what aspect of the Witness's testimony is objected to | Objection with concise explanation and authority | Response with concise explanation and authority |
|---|---|---|---|---|
| Amit Patel | Amit Patel will testify on his personal opinion as to Dr. Jain's character as a business | Partial Objection: Plaintiff objects to this witness testifying about Dr. Jain's charitable work | | |

---

[36]    Fed. R. Evid. 801(d)(2)(D).

| | | | | |
|---|---|---|---|---|
| | executive based on the previous eight years of their working relationship. | because that is not relevant to this case. Otherwise, Plaintiff does not object to this witness. | | |

## IV.     Defendants' Objections to Plaintiff's Witness List

| Witness | Concise non-argumentative summary of witness and connection to facts | Concise non-argumentative identification of what aspect of the Witness's testimony is objected to | Objection with concise explanation and authority | Response with concise explanation and authority |
|---|---|---|---|---|
| Abhijit Ramachandran | The Plaintiff will testify about his factual allegations contained in his Third Amended Petition; he will also testify to refute the allegations contained in the Defendants Counterclaim. | Defendants object to Mr. Ramachandran's scope of his proposed testimony. | Plaintiff's testimony should be restricted to only the active claim and facts alleged in his Third Amended Petition for fraud and Defendants' remaining counterclaim for Declaratory Judgment on grounds of relevance. Federal Rule of Evidence 401. Testimony concerning alleged breach of employment agreements, Long Term Incentive Unit ("LTIUs") Award agreements, patents / inventorship, breach of fiduciary duty, civil conspiracy, | It is impossible to separate the factual allegations supporting the fraud claim from the factual allegations supporting all the other claims because there is significant overlap. Plaintiff should be permitted to testimony on any facts that support his fraud claim regardless of whether they also support any of the other claims. A "bald assertion" that the probative value of the |

| | | | quantum meruit, and unjust enrichment is now irrelevant as these claims have been disposed of by this Court in its December 15, 2020 Memorandum Opinion and Order regarding Defendants' Motion to Dismiss and January 11, 2022 Memorandum and Opinion Order regarding Defendants' Motion for Summary Judgment. [Dkt. Nos. 153 and 172]. Federal Rule of Civil Procedure 401.<br><br>If found relevant, the probative value of such facts for matters that have already been decided by the Court would be substantially outweighed by the unfair prejudice it would cause the Defendants. Federal Rule of Evidence 403.<br><br>Moreover, such testimony would likely confuse the | evidence "was substantially outweighed by its prejudicial effect is not enough to preclude probative evidence.[37] |
|---|---|---|---|---|

---

[37]   *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court.")

| | | | | |
|---|---|---|---|---|
| | | | resolved issues from the remaining issue concerning LTIUs, would mislead the jury, cause undue delay, and overall waste the time and resources of the jury and the Court. Federal Rule of Evidence 403. | |
| Poonam Patil | Ms. Patil is the wife of the Plaintiff. She will testify about the facts known to her concerning Plaintiff's actions taken in reliance on the promises made by Defendants. | | | |
| Tyler Brous | Tyler Brous, an agent for Lennox Capital Partners, LP, was engaged by AROG in 2015 to prepare AROG for an IPO in 2016. He will testify about his interactions with Dr. Jain and AROG; he will testify about his plaining and recommendations for AROG on the 2016 IPO; he will testify about his interactions with Plaintiff and Defendant Dr. Jain concerning the 2016 IPO and | Defendants object to Mr. Brous' testimony regarding a potential IPO in 2015 and 2016. | Mr. Brous is a former consultant who provided less than half of his working time to AROG Pharmaceuticals, LLC ("AROG") for a period of less than 6 months.  His testimony regarding a potential IPO in 2015 or 2016, and potential proceeds therefrom, is irrelevant to the issue of purported LTIU fraud that allegedly occurred in 2011, 2012 and 2014, years before he was retained by AROG on June 29, | The Defendants' statements about Brous' testimony conflict with his actual deposition testimony. If AROG wants to use this information to impeach Brous, it has every right to do so. It does not have the right to block his testimony based on their assessment of it. |

| | | | |
|---|---|---|---|
| | the Plaintiff's allegations; he will testify about Plaintiff's Long Term Incentive Units; he will testify about Dr. Jain's attempts to eliminate Abby's rights under the 2010 Plan to avoid a payout in the event of an IPO; he will testify about the value of AROG between 2015 and 2017, which was within the scope of his engagement with AROG and within his expertise as a valuation expert. | | 2015.  Federal Rule of Evidence 401.\n\nIndeed, the effort to explore an IPO for AROG in 2015 ended in November of 2015 due to market forces (~40% drop of major biotech index from peak earlier that year).  Mr. Brous' consulting services for AROG ended in January 2016.  Mr. Brous' testimony, to the extent considered relevant, should be confined to the duration of his engagement by AROG.  Federal Rules of Evidence 401 and 403. | |
| | | Defendants object to Mr. Brous' proposed testimony regarding Arog's Long Term Incentive Units | Mr. Brous should not be able to opine as an expert as to the terms of the LTIU plan as (i) he has not been designated as an expert and (ii) does not have the requisite specialized knowledge to help the trier of fact understand the plan. Federal Rule of Evidence 702.\n\nMr. Brous should not testify that the consummation of an IP was a triggering | The Defendants cannot object to Brous as an expert because that deadline has passed. Consequently, Brous can testify as an expert in accord with the expert designations made in this case.\n\nBrous can testify as a witness about his opinion |

| | | | | event for payment for LTIUs under the 2010 Plan. Section 5 of the Plan states that payments in Section 6, which refers to Public offerings, "<u>may</u> be made in the Administrator's discretion" (emphasis added). Section 6 of the LTIU plan provides that, following the consummation of a Public Offering, that the Administrator "<u>may</u>" convert LTIUs into public stock or "<u>may</u>" provide cash payments for LTIUs. Testimony from Brous that a consummated IPO would automatically equal payment from the 2010 plan is not only factually inaccurate (Rule 102), but if introduced would cause prejudice and confusion to Defendants. Federal Rules of Evidence 401 and 403. | about whether AROG was in a position to do an IPO because he was the person working to help them plan and prepare for an IPO. |
|---|---|---|---|---|---|
| | | | Defendants object to Mr. Brous' proposed testimony regarding the value of AROG beyond his | Mr. Brous should not be able to opine as to the value of AROG as he does not qualify as an expert as he doesn't have specialized | The Defendants cannot object to Brous as an expert because that deadline has passed. Consequently, |

|  |  | consultancy with AROG and in any capacity as a valuation expert. | skills, training, education, or experience in valuating oncology pharmaceutical companies. Federal Rule of Evidence 702. Moreover, the bases of his conclusions to the value of AROG are based on accepting the work of others without investigating the factors behind their valuation, much less an independent investigation and assessment of facts to build his own valuation. See *Jacked Up LLC* and *GWTP INVS*. Indeed, Mr. Brous failed to testify in his deposition as to a definitive value of AROG at a specific point in time. As he lacks the qualifications to offer expert testimony and his opinions on valuation are not based on reliable scientific or technical methodology, they will not be useful to the jury and should be excluded. Federal Rule of Evidence 702. | Brous can testify as an expert in accord with the expert designations made in this case. |
|---|---|---|---|---|
| Karl Schwabauer | Mr. Schwabauer, a damage expert, | Defendants object to Mr. | Based on his deposition, Mr. | The Defendants cannot object to |

| | will testify about the damages incurred by Plaintiff as a result of the common law fraud. | Schwabauer's testimony as a damage expert to Plaintiff's common law fraud claim regarding the LTIUs at issue in this case. | Schwabauer's testimony will be restricted to reciting the findings of work performed by others (e.g., valuations of AROG for internal purposes as generated by BSV) and will lack the ability to provide evidence that he conducted an investigation to the facts behind conclusions reached by BSV *or* that he performed an independent evaluation for himself.

Testimony Mr. Schwabauer's testimony is not relevant, reliable or helpful to the jury Federal Rule of Evidence 401 and 403 and he also fails to provide the independent, reliable, and technical methodology necessary to establish his testimony as expert testimony. Federal Rule of Evidence 702. | the testimony of an expert. |
| Dr. Neil Shah | Dr. Shah's testimony will establish the extent of Abby's work on developing | Defendants object to the proposed testimony of Dr. Shah as it relates to | Dr. Shah's testimony is not relevant. Federal Rule of Evidence 402. Plaintiff's claims related to or | Dr. Shah's testimony is relevant as both intrinsic evidence and extrinsic |

| | | | |
|---|---|---|---|
| | certain ideas that were incorporated into AROG's three Crenolanib Patents. Dr. Shah will also testify about his interactions with Dr. Jain concerning these ideas, including his conversations with Dr. Jain to convince him that it was viable to utilize Crenolanib to target FLT3. Before this conversation, Dr. Jain was reluctant to use Crenolanib to target FLT3 because the industry consensus at the time was that molecule like Crenolanib could not effectively target FLT3. Specifically, he will testify about Dr. Jain's lack of involvement in this process to develop an effective idea to target FLT3 until after the idea was developed and tested; and he will testify about Dr. Jain's actions to conceal his | purported and/or patented inventions related to crenolanib – including inventorship thereto, and to the early development of crenolanib as a FLT3 inhibitor and his interactions with Plaintiff and Defendants related to this early development. | regarding the patents at issue were decided by this Court in its December 15, 2020 Memorandum Opinion and Order. [Dkt. No. 153]. Dr. Shah's testimony regarding Crenolanib's early development is irrelevant to any issues regarding Plaintiff's LTIUs, any grants thereto, or any alleged statements made by Dr. Jain at the time of the LTIU grants. *Id.*<br><br>Moreover, Plaintiff's prior claims concerning intellectual property have been disposed of in this case (Dkt. Nos. 153 and 72). Introduction of testimony from Dr. Shah concerning IP-related matters is not only irrelevant but provides a high likelihood of prejudice and confusion for the jury while simultaneously wasting the Court and the jury's time on matters that are no longer active . Federal Rule of Evidence 403. | evidence to show that Dr. Jain engaged in other acts of fraud that are relevant to the fraud at issue in this case. See Plaintiff's Motion In Limine [ECF No 182]<br><br>Also, Dr. Shah's testimony is relevant to show that Abby worked significantly on matters outside the scope of his employment contract, which is relevant to his reliance claim. |

| | involvement with Abby in discovering and developing this idea incorporated into the AROG patents. He will also testify that Dr. Jain was not trustworthy to deal with. | | Moreover, Dr. Neil Shah and the university that he works for (UCSF) are not parties to this lawsuit and, aware of the lawsuit following his deposition and communications from Plaintiff and Plaintiff's counsel, have had no further communication with Defendants concerning this matter.  Indeed, Dr. Shah testified at his deposition that although he and UCSF had explored the possibility of asserting rights to their work with crenolanib, they decided to not pursue any patent applications.  As such, any testimony by Dr. Shah is irrelevant (Federal Rule of Evidence 402) and if relevant, admission would very likely be unfairly prejudicial to Defendants, confuse the issues and mislead the jury, and waste the time of this Court and the jury. Federal Rule of Evidence 403. | |
| Dr. Vinay Jain | Defendant Dr. Jain will testify about Plaintiff's | Defendants object to any testimony by | Plaintiff's testimony should be restricted to only the active | It is impossible to separate the factual |

| | | | |
|---|---|---|---|
| allegations in Plaintiff's Third Amended Petition. | Dr. Jain that is not relevant to the one remaining fraud claim. | claim and facts alleged in his Third Amended Petition for fraud and Defendants' remaining counterclaim for Declaratory Judgment on grounds of relevance. Federal Rule of Evidence 401.<br><br>Testimony concerning alleged breach of employment agreements, Long Term Incentive Unit ("LTIUs') Award agreements, patents / inventorship, breach of fiduciary duty, civil conspiracy, quantum meruit, and unjust enrichment is now irrelevant as these claims have been disposed of by this Court in its December 15, 2020 Memorandum Opinion and Order regarding Defendants' Motion to Dismiss and January 11, 2022 Memorandum and Opinion Order regarding Defendants' Motion for Summary Judgment.  [Dkt. Nos. 153 and 172]. | allegations supporting the fraud claim from the factual allegations supporting all the other claims because there is significant overlap. Plaintiff should be permitted to examine Dr. Jain on any facts that support his fraud claim regardless of whether they also support any of the other claims.<br><br>Plaintiff should also be permitted to examine Dr. Jain on his other acts of fraud in accord with the Plaintiff's Motion in Limine [ECF No 182]. |

| | | | Federal Rule of Civil Procedure 401.<br><br>If found relevant, the probative value of such facts for matters that have already been decided by the Court would be substantially outweighed by the unfair prejudice it would cause the Defendants. Federal Rule of Evidence 403.<br><br>Moreover, such testimony would likely confuse the resolved issues from the remaining issue concerning LTIUs, would mislead the jury, cause undue delay, and overall waste the time and resources of the jury and the Court. Federal Rule of Evidence 403. | |
| Edward McDonald | Mr. McDonald will testify about AROG's work policies; he will testify about Abby's termination; he will testify about the cancellation of Abby's LTIUs; he will testify about the revocation of the | Defendants object to the proposition that Mr. McDonald will testify as to the "cancellation" of LTIUs. | Regarding cancellation of LTIUs, Mr. McDonald will only testify that Mr. Ramachandran's LTIUs were (1) automatically cancelled upon termination for cause; (2) AROG has never taken independent action | If Plaintiff can show that AROG canceled his units after his termination without cause and failed to pay him for such a cancelation, this is evidence that Dr. Jain |

| | | | |
|---|---|---|---|
| | 2010 IP Agreement; and he will testify about Abby's trip to India at the end of 2016. | | to cancel any of his units; and (3) pursuant to Section 10(a) of the 2010 Plan, even if he was terminated without cause, the majority of his LTIUs have now expired as more than 10 years have passed since the grant dates of the 2010, 2011, and 2012 LTIU grants. | and AROG never intended to honor their promises to Plaintiff.<br><br>McDonald testified that he considered Plaintiff's units canceled as of his termination regardless of whether he was terminated "with cause" or "without cause" because he contends that AROG can take that position pursuant to section 5(b) of the 2010 LTIU Plan. Plaintiff rejects this position. Plaintiff can show that this attempt to "forfeit" Abby's units upon his termination without cause is evidence that Dr. Jain and AROG never intended to honor the promises associated with the 2010 LTIU Plan. |
| | | Defendants object to the | Moreover, Mr. McDonald will not | This is no longer relevant |

| | | proposition that Mr. McDonald will testify as to the "revocation" of Ramachandran's 2010 IP agreement with AROG. | testify that Mr. Ramachandran's 2010 IP Agreement has been revoked. This Court has held that the 2010 IP Agreement "undisputedly assigned all [of Ramachandran's] intellectual property interest to AROG" and that Ramachandran would need to seek judicial rescission of the agreement before he had standing for his intellectual property claims. [Dkt. No. 153]. As Ramachandran has failed to secure such judicial rescission and the patent-related matters have been resolved in this case, any such testimony is now irrelevant and/or consuming, prejudicial, and a waste of time. Federal Rules of Evidence 401 and 403. | because Defendant have indicated that they are non-suiting the claims under the 2010 IP Agreement. |
|---|---|---|---|---|
| Greg Fisher | Mr. Fisher will testify about his role in the termination of Plaintiff; he will testify about the letter he delivered to Plaintiff to force Plaintiff to | Defendants object to Plaintiff's characterization of the "letter" – which was a letter entitled "Employment Separation Agreement" – | Mr. Fisher should be precluded from providing testimony regarding any correspondence of settlement discussions with Mr. Ramachandran, including but not limited to the | Fisher is a direct fact witness related to the termination of Plaintiff.

And the letter he delivered to Plaintiff is not |

| | | | |
|---|---|---|---|
| | relinquish his LTIUs in AROG for nothing; he will testify about how the cancellation of Abby's LTIUs would benefit the Defendants; and he will testify about the value of AROG, as determined by an independent appraisal known as Bioscience. | delivered to Ramachandran by Mr. Fisher | February 16, 2017 letter entitled "Employment Separation Agreement." Federal Rule of Evidence 408. | protected by Rule 408. [38]<br><br>Pursuant to Rule 32(a)(3), Plaintiff intends to introduce Fisher deposition testimony because he testified as 30(b)(6) witness. |
| | | Defendants object to Plaintiff's inference that Ramachandran's LTIUs were "cancelled" by Defendants | Mr. Fisher should be precluded from offering any testimony other than Mr. Ramachandran's LTIUs were (1) automatically cancelled upon termination for cause; (2) AROG has never taken independent action to cancel any of his units; and (3) pursuant to Section 10(a) of the 2010 Plan, even if he was terminated without cause, the majority of his LTIUs have now expired as more than 10 years | If Fisher has information about these topics, they are relevant to Plaintiff's fraud claim. |

[38]     *Holcombe v. Advanced Integration Tech.*, Civil Action No. 4:17-CV-522, at *5-6 (E.D. Tex. Jan. 14, 2019) (holding that "separation agreement and release" presented to terminated employee was not protected by Rule 408 because "there was no indication that plaintiff had any discussion with Defendants about whether they engaged in actionable conduct.") (*citing Haun v. Ideal Indus, Inc.*, 81 F.3d 541, 547& n.3 (5th Cir. 1996) and *Seasonwein v. First Montauk Securities*, 324 F. App'x 160, 162 (3d Cir. 2009) (holding that, "in the case of potential claims, the policy behind Rule 408 does not come into play."); *compare United States v. Jones*, 663 F.2d 567, 570-71 (5th Cir. 1981) (holding that "statement at issue is paradigmatic nonhearsay; it was offered because it contains threats made against officers of the federal courts, i.e., it contains the operative words of this criminal action.).

| | | | | |
|---|---|---|---|---|
| | | | have passed since the grant dates of the 2010, 2011, and 2012 LTIU grants.<br><br>Moreover, such testimony regarding purported cancellation of LTIUs is irrelevant based on current rulings of the court, as a triggering event has not occurred, rending such testimony irrelevant.  Federal Rule of Evidence 402. | |
| Edwin Flores | Mr. Flores, a patent attorney, will testify about the facts related to the decision by Dr. Jain to take sole credit for all ideas incorporated into the Crenolanib Patents, including the ideas developed during the collaboration between Dr. Shah and Abby.  Mr. Flores will also testify about the information that Dr. Jain concealed from him to hide Dr. Shah and Abby's ideas that would qualify them as inventors. | Defendants object to the proposed testimony of Edwin Flores, Ph.D, concerning the purported and/or patented inventions related to crenolanib – including inventorship thereto, and to the early development of crenolanib as a FLT3 inhibitor. | As provided above for Dr. Shah, only one claim and one counterclaim remain in this case, and both are related to AROG's 2010 LTIU plan.  Dr. Flores' testimony regarding Crenolanib's patent portfolio are entirely unrelated to equity grants.  Federal Rule of Evidence 401.<br><br>Moreover, Plaintiff's prior claims concerning intellectual property have been disposed of in this case [Dkt. Nos. 153 and 172]. Introduction of testimony from Dr. Flores concerning | Flores testimony is relevant to prove Dr. Jain's other acts of fraud. See Plaintiff's Motion in Limine for further support. [ECF No. 182].<br><br>Flores testifies about what he told Dr. Jain concerning inventorship. This testimony makes it clear that Dr. Jain knew that he should have informed Flores about Dr. Shah's work, especially since |

| | | | intellectual property-related matters is not only irrelevant but also provides a high likelihood of prejudice and confusion for the jury while simultaneously wasting the Court and the jury's time on matters that are no longer active. Federal Rules of Evidence 402 and 403. | there was a dispute over the MTA where UCSF would not agree to assign all of Dr. Shah's work to AROG. This testimony is critical to show Dr. Jain's patent fraud.<br><br>Pursuant to Rule 32(a)(3), Plaintiff intends to introduce Flores deposition testimony because he testified as 30(b)(6) witness. |
|---|---|---|---|---|
| Taizoon Khokhar | Taizoon will testify concerning Abby's written files on his termination. | Defendants object to Plaintiff's desire to call Mr. Khokhar by deposition, as he is within the subpoena power of this Court. | Plaintiff does not currently agree to allow Khokhar to testify by deposition. Mr. Khokhar is not beyond the subpoena power of the Court as he currently presides in Irving, Texas, and may testify live.<br><br>Moreover, Defendant has failed to establish this witness's unavailability as required by this Court's Order on July 14, 2022. | Pursuant to Rule 32(a)(3), Plaintiff intends to introduce Khokhar deposition testimony because he testified as 30(b)(6) witness. |

| Richard Squires | Mr. Squires, who is a partner in the firm Lennox Capital Partners, will testify about the work done by Lennox on behalf of AROG and his interaction with Dr. Jain and Abby during the IPO process. | Defendants object to the proposed testimony of Mr. Squires for the proposed interactions with Defendants is subject to a prior confidential settlement. | This should not be admissible as it is subject to a prior confidential settlement agreement involving additional parties beyond the Defendants in this case (e.g., charitable foundations associated with Dr. Jain), wherein Dr. Jain and associated entities have not admitted to any wrongdoing and does not meet any of the exceptions provided for in the rule. Federal Rule of Evidence 408(a)(1). | The Defendants cannot use a settlement agreement to preclude someone from being a fact witness at a trial. |
|---|---|---|---|---|
| | | | This proposed testimony relates to the settled Lennox dispute are only being offered for the purpose of attempting to show that accused wrongdoing of Dr. Jain and AROG without an admission or finding of any truthfulness to such accusation – is somehow relevant and helpful to this Court and the jury in ascertaining the purported fraud of Defendants concerning the discrete issue in this | |

| | | | case:  LTIUs granted to Ramachandran. Federal Rules of Evidence 401, 404 and 408(a)(1).<br><br>Alternatively, if the court does find that Mr. Squires testimony related to the Lennox dispute relevant, the probative value of this evidence would be substantially outweighed by the cause of unfair prejudice to Defendants and the high likelihood that this evidence will mislead the jury.<br><br>Essentially, allowing this exhibit would cause there to be a "trial within a trial" regarding the proposed issues and settlement between Lennox, Richard Squires and Dr. Jain. Federal Rule of Evidence 403. | |
| | | Defendants object to this testimony as irrelevant to the remaining claim and counterclaim in this matter. | This offered testimony is not relevant to Plaintiff's claim as Lennox Capital and additional parties to this matter ("Lennox") were not employees of AROG, did not have LTIUs or other | |

| | | | incentive award units provided to AROG's employees, and this matter is subject to a confidential settlement agreement and the admission of such testimony would be unfairly prejudicial to Defendants and confusing to the jury.  Federal Rules of Evidence 401, 402, 403 | |
|---|---|---|---|---|
| Annemike DeMaggio | Ms. DeMaggio will testify about her lawsuit against Dr. Jain, asserting allegations that Dr. Jain terminated her without cause and cancelled her LTIU units. | Defendants object because this witness was not identified in Plaintiff's initial disclosures. | | |
| | | Defendants also object to Dr. DeMaggio's testimony as it concerns a dispute subject to a negotiated, confidential settlement agreement which included claims to an incentive plan that is not affiliated with AROG's 2010 LTIU plan or AROG's 2014 Change in Control Plan | This prior lawsuit between Plaintiff Counsel's previous clients, Annemieke DeMaggio and Anthony DeMaggio (the "DeMaggios") and Dava Oncology LP ("Dava"), a separate company from AROG and not a named Defendant in this lawsuit, is completely irrelevant to this case.

Additionally, this case involves another defendant, Mark Levonyak, who is not a party to this litigation, which makes this | |

| | | | | |
|---|---|---|---|---|
| | | | exhibit even more irrelevant.  Federal Rule Evidence 401.

Mr. Tony DeMaggio is a former consultant for Dava and never provided services for AROG. Annemieke DeMaggio, PhD's employment relationship with Dava ended over 9 years ago; she also never provided services for AROG. Therefore, this proposed exhibit introduces a lawsuit and parties that are wholly unrelated to the remaining fraud claim related to AROG's 2010 LTIU plan.

If the Court finds her testimony relevant, the probative value is substantially outweighed by the likelihood of unfair prejudice to Defendants, a mislead and confused jury, and wasted time to weigh the merits of an unrelated matter whereby Dr. Jain has admitted no wrongdoing, AROG is not involved at all, and that has | |

| | | | been settled by separate agreement. Federal Rule of Evidence 403.<br><br>In sum, Plaintiff is trying to mislead the Jury and build his case on previous acts instead of focusing on the facts specific to this case to prove his case.  Further, the settlement has a strict confidentiality clause between the parties and anything regarding such dispute and settlement should remain confidential. Federal Rules of Evidence 401, 403, and 404.<br><br>Finally. Defendants object to this exhibit because it is irrelevant to the issues in this lawsuit because it involves parties that are not a part of this litigation, the DeMaggios and Mark Levonyak and involves "various claims" against the parties that are not related to this case. Essentially, allowing this exhibit would cause there to be a "trial within a trial" regarding the | |

| | | | proposed exhibit. This would lead to the Defendants needing to relitigate a settled matter and call witness that are completely unrelated to this case. Introduction of this evidence would prejudice Defendants, cause jury confusion and waste the Court's time. Federal Rule of Evidence 403. | |
|---|---|---|---|---|

**V.    Defendants' Objections to Plaintiff's Deposition Designations and Counter Designations**

| Deposition Designation with Page and Line Numbers | Counter-Designations (if applicable) with Page and Line Numbers | Excerpt Objected to with Page and Line Numbers | Objection with Concise explanation and authority | Response with Concise Explanation and Authority |
|---|---|---|---|---|
| Greg Fisher<br><br>4:14-5:25<br>6:6-6:20<br>7:20-9:17<br>10:15-10:24<br>11:06-11:11<br>12:13-13:02<br>15:24-17:4<br>17:15-18:24<br>22:03-24:20<br>24:24-25:04<br>25:25-30:17<br>31-24-33:21<br>35:03-35:6<br>38:02-39:20<br>40:17-41:6 | | 4:14-5:25<br>6:6-6:20<br>7:20-9:17<br>10:15-10:24<br>11:06-11:11<br>12:13-13:02<br>15:24-17:4<br>17:15-18:24<br>22:03-24:20<br>24:24-25:04<br>25:25-30:17<br>31-24-33:21<br>35:03-35:6<br>38:02-39:20<br>40:17-41:6 | Defendants object to Mr. Fisher being called by deposition in this matter. The Federal Rules of Civil Procedure list very specific reasons a party may use the deposition of a witness. Fed.R.Civ.Pro. 32(a)(4). Mr. Fisher does not meet any of these exceptions therefore, he should not be allowed to be called as a witness by deposition. | Pursuant to Rule 32(a)(3), an adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6).<br><br>Fisher testified as a corporate representative pursuant to a |

|  |  |  |  | Plaintiff also failed to comply with July 14, Order for deposition designations in that Plaintiff did not state for "that for each deposition designation, Counsel must explain with sufficient detail the legal and factual basis for the witness's unavailability (e.g., the witness has passed away (Rule 32(a)(4)(A)); the witness is not under the control of either party, lives over 100 miles from the courthouse, and will not comply with a trial subpoena)" [Dkt. No. 180]. As such, Plaintiff should not be allowed to present Mr. Fisher by deposition in this matter. | 30(b)(6) deposition.<br><br>The trial witnesses in this case are governed by the order issued on June 22, 2022. |
| Greg Fisher<br><br>17:15-18:24 | 18:25-20:17<br>21:13-21:16<br>21:25-26:02 |  | 18:13-17 | Mr. Fisher lacks personal knowledge to testify as to the reason why Abhijit should be terminated. Therefore, his testimony calls for speculation and should be excluded. | Fisher was present when Plaintiff was terminated. |
| Greg Fisher |  |  | 24:24-25:04 | Mr. Fisher's testimony about the | The Bioscience Valuation was |

| | | | | |
|---|---|---|---|---|
| 24:24-25:04 | | | 2014 Bio Science Valuation calls for hearsay and does not meet any of the stated exceptions to the hearsay rule. Federal Rules of Evidence 801 and 803. | an adoptive admission and is therefore not hearsay.[39] |
| Greg Fisher<br><br>25:25-30:17 | 30:24-31:9 | 25:25-30:17 | Mr. Fisher's testimony about the 2012 and 2014 Bioscience Valuation calls for hearsay and does not meet any of the stated exceptions to the hearsay rule. Federal Rules of Evidence 801 and 803. | The Bioscience Valuation was an adoptive admission and is therefore not hearsay.[40] |
| Greg Fisher<br><br>31:24-33:21 | | 31:24-33:21 | Mr. Fisher's testimony about the 2014 Bio Science Valuation calls for hearsay and does not meet any of the stated exceptions to the hearsay rule. Federal Rules of Evidence 801 and 803. | The Bioscience Valuation was an adoptive admission and is therefore not hearsay.[41] |
| Taizoon Khokhar | 6:12-6:18<br>49:16-52:10<br>53:22-57:01 | 6:4-6:11<br>6:19-7:02<br>48:13-49:15 | Defendants object to Mr. Khokhar being called by | Pursuant to Rule 32(a)(3), an adverse party |

[39]     *U.S. v. Central Gulf Lines, Inc.*, 974 F.2d 621, 628 (5th Cir.  1992) (holding that "survey reports were also admissible as admissions by a party opponent" because the party opponent "never objected to the survey reports prepared"); *Transbay Auto Serv., Inc. v. Chevron U.S. Inc.*, 807 F.3d 1113, 1118-22 (9th Cir. 2015) (holding that valuation submitted to bank for loan application is an adoptive admission to show fair market value of property).

[40]     *U.S. v. Central Gulf Lines, Inc.*, 974 F.2d 621, 628 (5th Cir.  1992) (holding that "survey reports were also admissible as admissions by a party opponent" because the party opponent "never objected to the survey reports prepared"); *Transbay Auto Serv., Inc. v. Chevron U.S. Inc.*, 807 F.3d 1113, 1118-22 (9th Cir. 2015) (holding that valuation submitted to bank for loan application is an adoptive admission to show fair market value of property).

[41]     *U.S. v. Central Gulf Lines, Inc.*, 974 F.2d 621, 628 (5th Cir.  1992) (holding that "survey reports were also admissible as admissions by a party opponent" because the party opponent "never objected to the survey reports prepared"); *Transbay Auto Serv., Inc. v. Chevron U.S. Inc.*, 807 F.3d 1113, 1118-22 (9th Cir. 2015) (holding that valuation submitted to bank for loan application is an adoptive admission to show fair market value of property).

| 6:4-6:11 6:19-7:02 48:13-49:15 135:04-135:12 | 134:04-135:03 | 135:04-135:12 | deposition in this matter.  The Federal Rules of Civil Procedure list very specific reasons a party may use the deposition of a witness. Fed.R.Civ.Pro. 32(a)(4).  Mr. Khokhar does not meet any of these exceptions therefore, he should not be allowed to be called as a witness by deposition.

Plaintiff also failed to comply with July 14, Order for deposition designations in that Plaintiff did not state for "that for each deposition designation, Counsel must explain with sufficient detail the legal and factual basis for the witness's unavailability (e.g., the witness has passed away (Rule 32(a)(4)(A)); the witness is not under the control of either party, lives over 100 miles from the courthouse, and will not comply with a trial subpoena)" [Dkt. No. 180]. As such, Plaintiff should not be | may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6).

Khokhar testified as a corporate representative pursuant to a 30(b)(6) deposition.

The trial witnesses in this case are governed by the order issued on June 22, 2022. |

| | | | allowed to present Mr. Khokhar by deposition in this matter. | |
|---|---|---|---|---|
| Edwin Flores<br><br>4:23-4:25<br>5:16-6:17<br>7:5-9:01<br>9:11-10:13<br>10:17-10:19<br>10:22-11:03<br>11:05-11:12<br>11:19-12:18<br>12:24-13:08<br>14:22-15:18<br>16:04-16:06<br>17:21-19:02<br>19:17-20:19<br>21:03-21:09<br>21:14-23:07<br>26:17-26:21<br>26:25-30:19<br>31:02-31:09<br>33:19-33:23<br>34:22-36:12<br>36:22-37:13<br>40:18-46:21<br>47:05-49:17<br>35:09-35:24<br>55:07-55:24<br>59:05-63:16<br>63:24-64:06<br>64:14-64:19<br>37:11-67:23<br>71:08-71:21<br>85:12-86:08<br>86:17-90:02<br>90:12-92:04<br>92:10-97:13<br>99:22-106:03<br>106:05-110:12<br>111:25-112:04<br>114:04-114:13 | | 4:23-4:25<br>5:16-6:17<br>7:5-9:01<br>9:11-10:13<br>10:17-10:19<br>10:22-11:03<br>11:05-11:12<br>11:19-12:18<br>12:24-13:08<br>14:22-15:18<br>16:04-16:06<br>17:21-19:02<br>19:17-20:19<br>21:03-21:09<br>21:14-23:07<br>26:17-26:21<br>26:25-30:19<br>31:02-31:09<br>33:19-33:23<br>34:22-36:12<br>36:22-37:13<br>40:18-46:21<br>47:05-49:17<br>35:09-35:24<br>55:07-55:24<br>59:05-63:16<br>63:24-64:06<br>64:14-64:19<br>37:11-67:23<br>71:08-71:21<br>85:12-86:08<br>86:17-90:02<br>90:12-92:04<br>92:10-97:13<br>99:22-106:03<br>106:05-110:12<br>111:25-112:04<br>114:04-114:13<br>114:23-115:11 | Defendants object to Dr. Flores being called by deposition in this matter. The Federal Rules of Civil Procedure list very specific reasons a party may use the deposition of a witness. Fed.R.Civ.Pro. 32(a)(4). Dr. Flores does not meet any of these exceptions therefore, he should not be allowed to be called as a witness by deposition.<br><br>Plaintiff also failed to comply with July 14, Order for deposition designations in that Plaintiff did not state for "that for each deposition designation, Counsel must explain with sufficient detail the legal and factual basis for the witness's unavailability (e.g., the witness has passed away (Rule 32(a)(4)(A)); the witness is not under the control of either party, lives over 100 miles from the courthouse, and will | Pursuant to Rule 32(a)(3), an adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6).<br><br>Flores testified as a corporate representative pursuant to a 30(b)(6) deposition.<br><br>The trial witnesses in this case are governed by the order issued on June 22, 2022. |

| 114:23-115:11 115:22-116:17 120:14-120:23 | | 115:22-116:17 120:14-120:23 | not comply with a trial subpoena)" [Dkt. No. 180]. As such, Plaintiff should not be allowed to present Dr. Flores by deposition in this matter. | |
|---|---|---|---|---|
| Edwin Flores 5:16-6:17 | | 6:4-17 | Defendants object as this is not Mr. Flores offering any testimony but counsel having a conversation. Therefore, it is irrelevant.  Federal Rule of Evidence 402. | |
| Edwin Flores 11:19-12:18 12:24-13:08 14:22-15:18 16:04-16:06 17:21-19:02 19:17-20:19 21:03-21:09 21:14-23:07 26:17-26:21 26:25-30:19 31:02-31:09 33:19-33:23 34:22-36:12 36:22-37:13 40:18-46:21 47:05-49:17 35:09-35:24 55:07-55:24 59:05-63:16 63:24-64:06 64:14-64:19 37:11-67:23 71:08-71:21 | | 11:19-12:18 12:24-13:08 14:22-15:18 16:04-16:06 17:21-19:02 19:17-20:19 21:03-21:09 21:14-23:07 26:17-26:21 26:25-30:19 31:02-31:09 33:19-33:23 34:22-36:12 36:22-37:13 40:18-46:21 47:05-49:17 35:09-35:24 55:07-55:24 59:05-63:16 63:24-64:06 64:14-64:19 37:11-67:23 71:08-71:21 85:12-86:08 86:17-90:02 | Defendant's cause of action regarding AROG's intellectual property, including FLT3 Patents, has been dismissed by this Court [Dkt. No. 153].  Any discussions or testimony regarding AROG's inventions, patents and patent applications therefrom, related contracts (e.g., material transfer agreements and confidentiality agreements) should not be admissible as they are completely irrelevant to Plaintiff's | Flores testimony is relevant to establish Dr. Jain's other acts of fraud. This argument is supported in Plaintiff's Motion In Limine, which is ECF No. 182. |

| | | | | |
|---|---|---|---|---|
| 85:12-86:08<br>86:17-90:02<br>90:12-92:04<br>92:10-97:13<br>99:22-106:03<br>106:05-110:12<br>111:25-112:04<br>114:04-114:13<br>114:23-115:11<br>115:22-116:17<br>120:14-120:23 | | 90:12-92:04<br>92:10-97:13<br>99:22-106:03<br>106:05-110:12<br>111:25-112:04<br>114:04-114:13<br>114:23-115:11<br>115:22-116:17<br>120:14-120:23 | remaining cause of action of fraud concerning the Long Term Incentive Units ("LTIUs") and Defendants' sole remaining counterclaim regarding the incentive plan whereby the LTIUs were issued. Federal Rules of Evidence 401, 402, 403 | |
| Edwin Flores<br><br>99:22-106:03 | | 104:02-104:21<br><br>105:24-106:03 | Defendants object to this designation because it calls for hearsay and does not meet any of the exclusions in the Federal Rules of Evidence.  Federal Rule of Evidence 801 and 803. | This is being offered for a non-hearsay purpose to determine Flores knowledge or lack of knowledge about the MTA dispute. |
| Edwin Flores<br><br>106:05-110:12 | | 106:05-107:02 | Defendants object because this calls for speculation as to whether or not the University of California San Francisco and AROG had a dispute concerning the concept Crenolanib and FLT3.  Mr. Flores lacks any personal knowledge regarding the same. [Cite] | This is being offered for a non-hearsay purpose to determine Flores knowledge or lack of knowledge about the MTA dispute. |
| Edwin Flores | | 106:05-107:01 | Defendants object because this calls for speculation as to | This is being offered for a non-hearsay |

| | | | | |
|---|---|---|---|---|
| 106:05-107:01 | | | whether or not the University of California San Francisco and AROG had a dispute concerning the concept Crenolanib and FLT3. Mr. Flores lacks any personal knowledge regarding the same. [Cite] | purpose to determine Flores knowledge or lack of knowledge about the MTA dispute. |
| Dr. Neil Shah<br><br>Entire Deposition | | Entire Deposition | Defendant's cause of action regarding AROG's intellectual property, including FLT3 Patents, has been dismissed by this Court [Dkt. No. 153]. Any discussions or testimony regarding AROG's inventions, patents and patent applications therefrom, related contracts (e.g., material transfer agreements and confidentiality agreements) should not be admissible as they are completely irrelevant to Plaintiff's remaining cause of action of fraud concerning the Long Term Incentive Units ("LTIUs") and Defendants' sole remaining counterclaim | Dr. Shah will testify that he provided AROG with the novel ideas that were incorporated into AROG Crenolanib Patents. He will testify that Plaintiff was the primary person he worked with during this process. Dr. Jain was not involved at any stage. He was in India. When Dr. Shah finished with the testing to affirm his idea, there was no agreement in place for the intellectual property rights. Once the attorneys executed a CDA (to cover confidentiality), Dr. Shah released his |

| | | | regarding the incentive plan whereby the LTIUs were issued.   Federal Rule of Evidence 401 and 402 | results to AROG. It was very good news. The concepts incorporated into Dr. Shah's testing was positive. However, when Dr. Shah first told Dr. Jain about this idea, Dr. Jain was reluctant to put any money into this because other companies that sought to target Flt-3 all failed. But once Dr. Jain was convinced, he pushed to obtain exclusive control over the intellectual property rights. Dr. Jain insisted that AROG control 100% of the commercializati on rights. But AROG and UCSF could not agree on this IP point. So, Dr. Jain instructed Dr. Shah to destroy his testing and work. Then, when Dr. Jain met with AROG's patent attorneys, he claimed that he |
|---|---|---|---|---|

| | | | | was the sole inventor. He even misled AROG's patent attorney about Abby's role with the company, saying that Abby was in "business development." And he failed to tell AROG's patent attorney that Abby requested he be listed as an inventor given his collaboration with Dr. Shah. But Dr. Jain concealed this from the patent attorney. This patent fraud to maintain exclusive control of AROG's Crenolanib Patents, which are a proxy for the value of AROG, is evidence to show that Dr. Jain defrauded Abby out of his promise to share in the long term growth of the company via the 2010 LTIU Plan once AROG got into Phase III. |
|---|---|---|---|---|
| | | | | Plaintiff's Motion in Limine further |

| | | | | supports this point. [ECF No 182] |
|---|---|---|---|---|
| Dr. Neil Shah<br><br>33:17-35:02 | | 35:22-24<br><br>33:17-35:02 | Plaintiff's counsel withdrew the questions; therefore, it is not relevant.<br><br>This testimony is not relevant. Federal Rule Evidence 401.  If it is relevant, it should be excluded as it prejudicial, confusing or waste of the jury's time. Federal Rule of Evidence 403. | This testimony is relevant (see response above and Plaintiff's Motion In Limine [ECF No 182]). And there is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[42] |
| Dr. Neil Shah<br><br>40:20-42:04<br>42:07-42:11<br>42:14-42:17<br>42:19-43:09 | | 40:20-42:04<br>42:07-42:11<br>42:14-42:17<br>42:19-43:09 | This testimony is not relevant. Federal Rule Evidence 401.  If it is relevant, it should be excluded as it prejudicial, confusing or waste of the jury's time. Federal Rule of Evidence 403. | This testimony is relevant (see response above and Plaintiff's Motion In Limine [ECF No 182]). And there is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[43] |

---

[42]    *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, 582 F.2d at 911. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, 30 F.3d at 1562.")

[43]    *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, 582 F.2d at 911. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, 30 F.3d at 1562.")

| | | | | |
|---|---|---|---|---|
| Dr. Neil Shah<br><br>43:14-44:24 | | 43:25-44:24 | This testimony is not relevant. Federal Rule Evidence 401.  If it is relevant, it should be excluded as it prejudicial, confusing or waste of the jury's time. Federal Rule of Evidence 403. | This testimony is relevant (see response above and Plaintiff's Motion In Limine [ECF No 182]). And there is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[44] |
| Dr. Neil Shah<br><br>46:17-46:23 | | 46:20-46:23 | Plaintiff's counsel withdrew the questions; therefore, it is not relevant.<br><br>This testimony is not relevant. Federal Rule Evidence 401.  If it is relevant, it should be excluded as it prejudicial, confusing or waste of the jury's time. Federal Rule of Evidence 403. | This testimony is relevant (see response above and Plaintiff's Motion In Limine [ECF No 182]). And there is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[45] |
| Dr. Neil Shah<br><br>47:19-47:20<br>47:22-49:02 | | 49:16-50:21 | This testimony is not relevant. Federal Rule Evidence 401.  If it | This testimony is relevant (see response above and Plaintiff's |

---

[44]        *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, 582 F.2d at 911. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, 30 F.3d at 1562.")

[45]        *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, 582 F.2d at 911. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, 30 F.3d at 1562.")

| | | | | |
|---|---|---|---|---|
| 49:09-49:19<br>49:24-51:18 | | | is relevant, it should be excluded as it prejudicial, confusing or waste of the jury's time. Federal Rule of Evidence 403. | Motion In Limine [ECF No 182]). And there is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[46] |
| Dr. Neil Shah<br><br>56:11-56:19<br>58:02-58:05 | | 56:17-56:29<br>58:02-58:05 | Plaintiff's counsel withdrew the questions; therefore, it is not relevant. | This testimony is relevant (see response above and Plaintiff's Motion In Limine [ECF No 182]). And there is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[47] |
| Dr. Neil Shah<br><br>56:23-57:20 | | 56:23-57:15<br>57:18-57:20 | This testimony is not relevant. Federal Rule Evidence 401. If it is relevant, it should be excluded as it prejudicial, confusing or waste | This testimony is relevant (see response above and Plaintiff's Motion In Limine [ECF No 182]). And there is no evidence |

---

[46]     *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, 582 F.2d at 911. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, 30 F.3d at 1562.")

[47]     *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, 582 F.2d at 911. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, 30 F.3d at 1562.")

| | | | | |
|---|---|---|---|---|
| | | | of the jury's time. Federal Rule of Evidence 403.<br><br>Defendants object to this designation because it calls for hearsay and does not meet any of the exclusions in the Federal Rules of Evidence.  Federal Rule of Evidence 801 and 803. | that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[48] |
| Dr. Neil Shah<br><br>58:02-58:05 | | 58:02-58:05 | Plaintiff's counsel withdrew the questions; therefore, it is not relevant.<br><br>This testimony is not relevant. Federal Rule Evidence 401.  If it is relevant, it should be excluded as it prejudicial, confusing or waste of the jury's time. Federal Rule of Evidence 403. | This testimony is relevant (see response above and Plaintiff's Motion In Limine [ECF No 182]). And there is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[49] |
| Dr. Neil Shah<br><br>64:09-64:11<br><br>64:15-64:25 | | | Defendants object to these designations because they calls for hearsay and do not meet any of the exclusions in the | This testimony is relevant (see response above and Plaintiff's Motion In Limine [ECF No 182]). And there |

---

[48]    *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, 582 F.2d at 911. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, 30 F.3d at 1562.")

[49]    *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, 582 F.2d at 911. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, 30 F.3d at 1562.")

| | | | Federal Rules of Evidence. Federal Rule of Evidence 801 and 803. | is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[50] |
|---|---|---|---|---|
| Dr. Neil Shah<br><br>69:16-70:12 | | 69:16-69:25<br>70:02-70:08<br>70:10-70:12 | This testimony is not relevant. Federal Rule Evidence 401. If it is relevant, it should be excluded as it prejudicial, confusing or waste of the jury's time. Federal Rule of Evidence 403.<br><br>Defendants also object to attempts to use this testimony as evidence of Dr. Jain's character. Such evidence is not allowed under Federal Rule of Evidence 404. | This testimony is relevant (see response above and Plaintiff's Motion In Limine [ECF No 182]). And there is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[51] |
| Dr. Neil Shah<br><br>72:13-72:22 | | 72:13-72:22 | This testimony is not relevant. Federal Rule Evidence 401. If it is relevant, it should be excluded as it prejudicial, | This testimony is relevant (see response above and Plaintiff's Motion In Limine [ECF No 182]). And there |

[50]     *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, 582 F.2d at 911. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, 30 F.3d at 1562.")

[51]     *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, 582 F.2d at 911. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, 30 F.3d at 1562.")

| | | | | |
|---|---|---|---|---|
| | | | confusing or waste of the jury's time. Federal Rule of Evidence 403.<br><br>Defendants also object to attempts to use this testimony as evidence of Dr. Jain's character. Such evidence is not allowed under Federal Rule of Evidence 404. | is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[52] |
| Dr. Neil Shah<br><br>73:13-73:18 | | 73:13-73:18 | This testimony is not relevant. Federal Rule Evidence 401.  If it is relevant, it should be excluded as it prejudicial, confusing or waste of the jury's time. Federal Rule of Evidence 403.<br><br>Defendants also object to attempts to use this testimony as evidence of Dr. Jain's character. Such evidence is not allowed under Federal Rule of Evidence 404. | This testimony is relevant (see response above and Plaintiff's Motion In Limine [ECF No 182]). And there is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[53] |
| Dr. Neil Shah<br><br>76:08-78:10 | | 77:23-78:10 | This testimony is not relevant. Federal Rule Evidence 401.  If it | This testimony is relevant (see response above and Plaintiff's |

[52]     *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, 582 F.2d at 911. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, 30 F.3d at 1562.")

[53]     *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, 582 F.2d at 911. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, 30 F.3d at 1562.")

| | | | | |
|---|---|---|---|---|
| | | | is relevant, it should be excluded as it prejudicial, confusing or waste of the jury's time. Federal Rule of Evidence 403.<br><br>Defendants also object to attempts to use this testimony as evidence of Dr. Jain's character. Such evidence is not allowed under Federal Rule of Evidence 404. | Motion In Limine [ECF No 182]). And there is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[54] |
| Dr. Neil Shah<br><br>116:22-117:07 | | | This testimony is not relevant. Federal Rule Evidence 401. If it is relevant, it should be excluded as it prejudicial, confusing or waste of the juries time. Federal Rule of Evidence 403.<br><br>Defendants also object to attempts to use this testimony as evidence of Dr. Jain's character. Such evidence is not allowed under | This testimony is relevant (see response above and Plaintiff's Motion In Limine [ECF No 182]). And there is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[55] |

---

[54]     *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, 582 F.2d at 911. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, 30 F.3d at 1562.")

[55]     *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, 582 F.2d at 911. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, 30 F.3d at 1562.")

| | | | | Federal Rule of Evidence 404. |
|---|---|---|---|---|
| Dr. Neil Shah 120:08-120:20 | | | 120:08-120:14 | Defendants object because the question starts with what looks to be like from a follow-up questions, so the question is nonsensical. | This testimony is relevant (see response above and Plaintiff's Motion In Limine [ECF No 182]). And there is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[56] |
| Dr. Neil Shah 131:01-137:25 | | | 132:25-134:10 | Defendants object to this designation because it calls for hearsay and does not meet any of the exclusions in the Federal Rules of Evidence.  Federal Rule of Evidence 801 and 803. | This testimony is relevant (see response above and Plaintiff's Motion In Limine [ECF No 182]). And there is no evidence that the prejudicial effect **substantially** outweighs the probative value because he probative value is very high.[57] Plaintiff is offering this statement for a |

---

[56]     *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, <u>582 F.2d at 911</u>. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, <u>30 F.3d at 1562</u>.")

[57]     *United States v. Ortega*, No. 14-20310, at *4 (5th Cir. Oct. 19, 2015) ("The test is not for "any" prejudice, but only for "undue prejudice" that "substantially" outweighs the probative value of the evidence. *Beechum*, <u>582 F.2d at 911</u>. "A bald assertion that the probative value of extrinsic offense evidence was substantially outweighed by its prejudicial effect does not show an abuse of discretion by the district court." *Bermea*, <u>30 F.3d at 1562</u>.")

| | | | | non-hearsay purpose. |
|---|---|---|---|---|
| Dr. Neil Shah<br><br>144:23-145:08 | | 145:06-08 | Plaintiff's counsel withdrew the questions; therefore, it is not relevant. | Agreed |
| Dr. Neil Shah<br><br>145:19-147:08 | | 147:06-08 | Plaintiff's counsel withdrew the questions; therefore, it is not relevant. | This appears to be incorrect. |

### VI.   Defendants' Objections to Plaintiff's Proposed Voir Dire and Jury Interrogatories

| Proposed Voir Dire / Jury Interrogatory | Defendants' objections | Plaintiff's response with concise explanation and authority |
|---|---|---|
| (1) Does any potential juror know personally or has heard the names of any of the parties, attorneys, or witnesses in this case?  (a) The parties to this lawsuit are Abhijit Ramachandran, Dr. Vinay Jain, AROG Pharmaceutical, and Jain Investments, LLC. | All claims against Jain Investments, LLC have been dismissed by this Court in prior rulings (Dkt. 153 and Dkt. 173).  Advising the jury that a matter involving Jain Investments, LLC is still active is misleading will likely be unduly prejudicial to Defendants and confusing to the jury.  Federal Rule of Evidence 403. | |
| (1) Does any potential juror know personally or has heard the names of any of the parties, attorneys, or witnesses in this case?  (c) The potential witnesses in | Dr. John Eckardt has not been designated as a witness in this lawsuit.  Instructing the jury to in this manner would be inaccurate, cause confusion, and would misleading.  Federal Rule of Evidence 403. | |

| | | |
|---|---|---|
| this case are Edward McDonald, Taizoon Kokhler, Greg Fisher, Tyler Brous, Dr. John Eckhardt, Dr. Neil Shah, Karl Schwabauer, Edwin Flores, and Annemieke DeMaggio. | | |
| (3) Has any potential juror or a member of their household | This proposed voir dire and jury interrogatory is incomplete and should be either corrected by Plaintiff or removed. | |
| (4) Has any potential juror or a member of their household been listed as an inventor on a U.S. Patent. | Patent and intellectual-related claims are no longer active in this case due to the Court's prior rulings (Dkt. 153 and 173).  Therefore, voir dire questions directed to patent-related matters is now irrelevant to the matter before the court and the facts they will need to consider.   Federal Rule of Evidence 401. This line of questions to the potential jury members are likely to cause Defendants undue prejudice, confuse the jury, and waste the Court and jury's time.  Federal Rule of Evidence 403. | |
| (9) Has any potential juror or a member of their household a. Filed a patent b. Been listed as an inventor c. Been involved in a dispute about inventorship d. Been involved in a dispute involving patent fraud e. Been accused of patent fraud | Patent and intellectual-related claims are no longer active in this case due to the Court's prior rulings (Dkt. 153 and 173).  Therefore, voir dire questions directed to patent-related matters is now irrelevant to the matter before the court and the facts they will need to consider.   Federal Rule of Evidence 401. This line of questions to the potential jury members are likely to cause Defendants undue prejudice, confuse the jury, and waste the Court and jury's time.  Federal Rule of Evidence 403. | |
| (11 l-m) Has any potential juror or anyone in that potential juror's household (d) Worked for a technical company | Plaintiff's proposed question of a technical company is vague and unclear as to what type of company he means.  This could cause confusion to the jury and waste the Courts time in trying to clarify. | |
| (11 l-m) Has any potential juror or | The term "product endorsements" is confusing and appears to not be relevant to this case. | |

| | | |
|---|---|---|
| anyone in that potential juror's household (l.) Worked for a person or company that is involved with or analyzes product endorsements? (m.) Worked for a person or company that endorses a product? | Discussing product endorsements with the potential jury members is likely to cause Defendants undue prejudice, confuse the jury, and waste the Court and jury's time.  Federal Rule of Evidence 403. | |